[Civ. No. 60228. Second Dist., Div. Four. Apr. 14, 1981.]

BAXTER RICE, as Director, etc., Petitioner, v.
ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD,
Respondent;
DANIEL STRASSBURGER, Real Party in Interest.

COUNSEL

George Deukmejian, Attorney General, and Richard M. Radosh, Deputy Attorney General, for Petitioner.

William B. Eley for Respondent.

Crispus A. Wright, Wright & Thompson and Zoe Wise Ross for Real Party in Interest.

OPINION

FILES, P. J.—This proceeding was brought here to review a decision of the Alcoholic Beverage Control Appeals Board, reversing a decision of the Department of Alcohol Beverage Control suspending the license of a retail liquor store. The subject matter is the interpretation of Business and Professions Code section 25602 which makes it a misdemeanor to sell an alcoholic beverage "to any obviously intoxicated person." Specifically, the issue is whether "intoxicated" applies only to alcoholic intoxication, as distinguished from intoxication arising out of a combi-

nation of alcohol and some other substance.[1] Upon consideration of the purpose and policy underlying the Alcoholic Beverage Control Act of this state, we have concluded that the statute forbids sale to any "obviously intoxicated person" regardless of the substance or combination of substances which brought on that condition.

By administrative accusation the department charged Strassburger, the operator of a licensed off-sale liquor store, with selling an alcoholic beverage to an obviously intoxicated person named Butler. A hearing on this charge took place before an administrative law judge, where evidence to the following effect was received.

An investigator for the department testified he observed an employee of the licensee sell a bottle of an alcoholic beverage to Butler. For approximately three minutes preceeding the sale, the investigator observed Butler, in the immediate view of the employee, "swaying back and forth, and . . . holding onto the cash register counter as if to support himself. At one time he let go of the counter and staggered back, swaying back and forth approximately two feet. He then staggered back to the cash register counter and again held on to the counter while swaying back and forth . . . . His eyes were extremely bloodshot and watery. He displayed difficulty keeping his eyes open. And on two occasions he would shake his head as to wake himself up while staggering or swaying back and forth at the counter. . . . He was attempting to carry on a conversation. His speech was so thick and slurred [the investigator] could not understand what he was saying. . . . [B]oth a female patron who was standing to his right and Kilroy [the employee] . . . appeared to be laughing at his actions."

After the sale "Butler picked the bottle up by the top of the bottle, and he moved away and he started to sway and swing the bottle up into the air." The employee then suggested that Butler's companion help Butler carry the bottle. Butler left the premises "in a very slow and deliberate manner, and he had difficulty maintaining a straight line. . . . "

---

[1]Business and Professions Code section 25602, subdivision (a) provides: "Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to any habitual or common drunkard or to any obviously intoxicated person is guilty of a misdemeanor."

Business and Professions Code section 24200 provides that a license issued by the Department of Alcoholic Beverage Control may be suspended or revoked for a violation by the licensee of "any other penal provisions of law of this state prohibiting or regulating the sale, . . . of alcoholic beverages or intoxicating liquors."

On the basis of this physical behavior the investigator, who had personally effected 60 to 80 previous alcohol-intoxication arrests, formed the opinion that the customer was too intoxicated to care for himself, but was not necessarily intoxicated by alcohol. The investigator then arrested the customer and transported him to county jail where two blood alcohol tests were performed. The tests indicated blood alcohol levels of .03 and .02 percent, respectively, approximately one hour after the sale.

Following the arrest, the investigator asked Kilroy if Butler appeared to be under the influence. Kilroy replied that Butler had a physical problem resulting from an accident so that he always looked that way.

Butler testified that he was employed at a shipyard as an electrician; that he had been in an automobile accident, and had had trouble keeping his balance; that he occasionally had "attacks" which lasted from 10 minutes to an hour, and that he had experienced such an attack at home before going to the liquor store. He said he had had only one beer to drink that evening, and that he had not smoked any marijuana for the past seven years.

Kilroy testified that he had known Butler since 1973, that he did not believe Butler was intoxicated, that since the automobile accident Butler had changed, and that he had seen Butler "in this condition" only twice.

In rebuttal, the Los Angeles Police Officer Rockwood, who had taken Butler into custody following the liquor store episode, was called. Rockwood had had many years experience in narcotics law enforcement. He testified that Butler had the odor of burned marijuana in his hair and on his clothing; further, his eyes were dilated, his mouth was dry and his tongue was coated. In Officer Rockwood's opinion Butler was under the influence of a combination of marijuana and alcohol.

The administrative law judge submitted a proposed finding that the licensee had violated section 25602, subdivision (a) and a recommendation of a 20-day suspension, which the department adopted.

The licensee appealed this decision to the Alcoholic Beverage Control Appeals Board, which reversed the decision upon the ground of insufficiency of the evidence. The opinion of the appeals board concluded: "There was evidence that Butler had smoked marijuana earlier in the evening. If the Legislature had wanted to provide that a combination of

drugs and alcohol constituted a violation of Business and Professions Code section 25602(a), it could have so stated, as it did in Vehicle Code section 23102(a). Since it has not done so, it cannot be said that a licensee is charged with notice that the sale of an alcoholic beverage to a person who is under the influence of marijuana and a small amount of alcohol constitutes a violation of Business and Professions Code section 25602(a)." (Fns. omitted.)

We first point out that the question whether Butler's behavior at the liquor store was caused by the automobile accident and its sequelae is not before us. The finding of the department that the licensee had violated section 25602, subdivision (a) necessarily implies a finding that Butler was "obviously intoxicated." "The findings and conclusions of the department on questions of fact are conclusive and final and are not subject to review." (Bus. & Prof. Code, § 23090.3.) Obviously a neurological or physical handicap caused by a traumatic injury is not a form of intoxication. The import of the department's finding was to discount the testimony regarding the effect of Butler's injury and credit the testimony of the investigator and Officer Rockwood that Butler was intoxicated.

The defense offered by Kilroy in this case, that he thought the customer suffered from a permanent physical disability, is not novel. In *Samaras v. Dept. Alcoholic Bev. Control* (1960) 180 Cal.App.2d 842 [4 Cal.Rptr. 857], the licensee charged with selling liquor to an intoxicated person produced evidence that his customer was a former prize fighter who sometimes appeared "punchy." Other witnesses described the customer's condition and behavior and expressed the opinion that he was intoxicated. The department found against the licensee and the appellate court affirmed, pointing out at page 844: "The courts are bound in cases of this kind by the substantial evidence rule, . . ."

Courts have long recognized that the outward manifestations of intoxication are well known and easily recognized. In *Coulter v. Superior Court* (1978) 21 Cal.3d 144, 155 [145 Cal.Rptr. 534, 577 P.2d 669], the court said: "Defendants have argued that the term 'obviously intoxicated' is too broad and subjective to serve as a satisfactory measure for imposition of civil liability. However, the phrase is contained in section 25602, a *criminal* statute, and the courts have experienced no discernible difficulty in applying it. (See *Samaras v. Dept. Alcoholic Bev. Control* (1960) 180 Cal.App.2d 842, 844 [4 Cal.Rptr. 857]; *People v. Smith* (1949) 94 Cal.App.2d Supp. 975 [210 P.2d 98]; *People v. John-*

*son* (1947) 81 Cal.App.2d Supp. 973, 975-976 [185 P.2d 105].) ■ As described in *Johnson*, 'The use of intoxicating liquor by the average person in such quantity as to produce intoxication causes many commonly known *outward* manifestations which are "plain" and "easily seen or discovered." If such outward manifestations exist and the seller still serves the customer so affected he has violated the law, whether this was because he failed to observe what was plain and easily seen or discovered, or because, having observed, he ignored that which was apparent.'" (Original italics.)

■ Because the manifestations of intoxication are so well known, nonexpert witnesses may offer opinion testimony based upon their observations as to a person's intoxication. (*People v. Conley* (1966) 64 Cal.2d 310, 325 [49 Cal.Rptr. 815, 411 P.2d 911].)

■ We turn now to the theory adopted by the appeals board that the term "intoxicated" as used in section 25602, subdivision (a) "refers solely to the consumption of alcoholic beverages."

That section is a part of the Alcoholic Beverage Control Act (Bus. & Prof. Code, § 23000 et seq.) The legislative declaration of the purpose of that act is found in section 23001: "This division is an exercise of the police powers of the State for the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages. It is hereby declared that the subject matter of this division involves in the highest degree the economic, social, and moral well-being and the safety of the State and of all its people. All provisions of this division shall be liberally construed for the accomplishment of these purposes."

In *Vesely v. Sager* (1971) 5 Cal.3d 153, 165 [95 Cal.Rptr. 623, 486 P.2d 151] the court said: "Our conclusion concerning the legislative purpose in adopting section 25602 is compelled by Business and Professions Code section 23001, which states that one of the purposes of the Alcoholic Beverage Control Act is to protect the safety of the people of this state. Moreover, our interpretation of section 25602 finds support in the decisions of those jurisdictions in which similar statutes, and statutes prohibiting the sale of alcoholic beverages to minors, have been found to have been enacted for the purpose of protecting members of the general public against injuries resulting from intoxication."

Section 25602 contributes to that purpose by prohibiting the distribution of alcohol to a class of persons who are likely to misuse it. Common knowledge of the characteristics of drug and alcohol intoxication surely includes the fact that one of the effects of intoxication is impairment of judgment. It was not unreasonable for the Legislature to believe that an intoxicated person who is handed a new bottle is likely to consume it immediately, thereby elevating his potential for dangerous or offensive behavior. Prevention of that situation is undoubtedly a purpose of section 25602.

The form of this section, as enacted in 1935, did not use the word "intoxicated." The 1935 enactment made it a misdemeanor to furnish an alcoholic beverage "to any habitual or common drunkard." (Stats. 1935, ch. 330, § 62, p. 1151.) The 1937 revision added the words "or to any obviously intoxicated person." (Stats. 1937, ch. 758, § 94, p. 2175.)

The words "habitual or common drunkard," read literally, appear to define a class of persons, without reference to the appearance or behavior of those persons at the time of the transaction. The words "obviously intoxicated person," on the other hand, identify an individual by his outward manifestations at the time of the transaction.

We are not aware of any official explanation for the 1937 amendment but this much is clear: the new prohibition, based upon what any liquor salesperson should be able to observe, greatly increased the probability that the seller would be able to carry out the purpose of the statute.[2]

Although the case law, cited above, has recognized that the outward manifestation of intoxication is so well known that an ordinary person will be able to recognize it, discovery of the cause of the intoxication is a different matter. The experience of the courts indicates that police officers, trained to deal with aberrant human behavior, are unable to say from observation whether a particular individual is under the influence of alcohol or one of the many drugs which are commonly misused, or a combination. (See, e.g., *People* v. *Howell* (1973) 30 Cal.App.3d 228, 232 [105 Cal.Rptr. 748]; *People* v. *Munsey* (1971) 18 Cal.App.3d 440, 446 [95 Cal.Rptr. 811].) It is manifest that a clerk in a liquor

---

[2]Years later the Supreme Court held that the expression "common drunkard" as used in Penal Code section 647, subdivision (11) was "unconstitutionally vague, uncertain and incapable of being uniformly enforced." (*In re Newbern* (1960) 53 Cal.2d 786, 792-797 [3 Cal.Rptr. 364, 350 P.2d 116].)

store could not reasonably be expected to distinguish between alcohol intoxication and intoxication caused by other drugs. It follows that an interpretation of section 25602 which required the clerk to make such a distinction would either place an unfair burden on the clerk or would completely nullify the statute if the seller is excused for lack of ability to discover the cause of the intoxication.

We find nothing persuasive in the argument of the appeals board that "intoxication" means alcoholic intoxication because the statute also refers to "drunkard," which connotes the use of alcohol. We interpret the 1937 amendment as a means of making section 25602 workable and enforceable, by establishing a standard which ordinary persons are able to apply.

On summary, we conclude that the purpose of section 25602 is to protect the public from the use of alcohol by a person who is already "obviously intoxicated;" that this protection is intended whether the existing intoxication was caused by alcohol alone or by other drugs or a combination of substances; and that the only common sense interpretation of the section is to apply it to persons who are "obviously intoxicated" without requiring any decision as to which drug or drugs have been ingested.

The decision of the Alcoholic Beverage Control Appeals Board is annulled with directions to affirm the decision of the department.

Kingsley, J., and McClosky, J., concurred.

The petition of real party in interest for a hearing by the Supreme Court was denied June 10, 1981.