[No. A034096. First Dist., Div. Five. Feb. 2, 1988.]

JOHN ROBERTSON JONES, JR., Plaintiff and Appellant, v. TOYOTA MOTOR COMPANY, LTD., et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

*This opinion, including the judgment, is certified for publication with the exception of parts II, III and IV, which do not meet the criteria for publication pursuant to California Rules of Court, rule 976(b).

COUNSEL

Guy D. Calladine, Joseph P. McMonigle , J. Lynn Glazier, Long & Levit, Stanley J. Bell and Micheal J. Appel for Plaintiff and Appellant.

Nancy J. Sheehan, Shana S. Faber, Russel G. Porter, Porter, Scott, Weiberg & Delehant, George P. Schiavelli, Sharon Munson Swanson, Bronson, Bronson, & McKinnon and Horvitz, Levy & Amerian for Defendants and Respondents.

OPINION

LOW, P. J.—In part I, we discuss the definition of the "obviously intoxicated minor" for purposes of a liquor licensee's civil tort liability as compared to a driver's responsibility when "driving under the influence" of alcohol.

Plaintiff John Robertson Jones, age 18, and 2 of his friends, David Purser, age 20, and Andy Dowdle, age 19, left Napa around 7:30 p.m. for Lake Tahoe in Dowdle's Toyota SR-5, a 4-wheel-drive pickup truck. Over a period of three to four hours, each consumed six cans of beer and one bottle of beer from a bar before reaching O.B.'s Board (O.B.), a restaurant in Truckee, at approximately 10 p.m.

The three stayed in O.B. for about 20 minutes, sitting by themselves at a table in the bar portion of the restaurant. They did not converse with any of O.B.'s employees other than to order their drinks from the bartender. Purser ordered and drank a mixed whisky drink; Jones and Dowdle each drank a beer. After leaving O.B., the three went to another bar, leaving that bar at 11 p.m. Purser had another mixed whisky drink. The three then continued their trip with Purser driving and Dowdle sitting in the passenger seat. Jones sat on an ice chest placed between the two bucket seats. In this position, Jones, who is six feet, two inches tall, was higher in the cab than the other two, so high in fact that he could not sit up straight. He was not wearing a seatbelt.

The accident occurred about 15 minutes later when the truck was travelling approximately 50 miles per hour and it began to "fishtail." Purser attempted to brake, leaving 120-foot skidmarks. The truck hit a snowbank at 30 to 40 miles per hour and rolled over onto its roof. Dowdle suffered only minor injuries; Purser was hit on the head and was briefly unconscious, but suffered no permanent injuries. Purser was arrested on suspicion of felony driving under the influence of alcohol, with a blood alcohol level of .10 percent. Jones, who was seated on the ice chest, suffered a neck injury that rendered him a quadriplegic. The injury was a flexion-compression type of injury, resulting from Jones landing on his head.

Jones sued Purser, Dowdle, each bar the three visited that evening and the various Toyota entities. All defendants settled before trial except O.B. and Toyota. Jones charged O.B. with negligence in serving Purser, a minor, when he was obviously intoxicated, in violation of Business and Professions Code section 25602.1. Jones's complaint against Toyota was based upon negligence, breach of warranty and strict products liability. Only the claim for strict liability went to the jury; the claim for negligence was dismissed relatively early into the trial; and the claim for breach of warranty was dismissed following a motion for nonsuit after presentation of plaintiff's evidence. The jury found unanimously in favor of O.B., and specifically that Purser was not obviously intoxicated at the time he was served. The jury also found in favor of Toyota. We affirm the judgment.

# I

## A

██ Jones contends that the trial judge improperly instructed the jury on the definition of obvious intoxication.[1] We agree, but hold it to be harmless error. It was error to instruct the jury that there is a range of intoxication, with "under the influence" falling substantially below "obvious intoxication." Although these two conditions are correlated, they do not form a fixed hierarchy. "Under the influence" is defined by a person's capability to drive safely, whereas "obvious intoxication" is defined by a person's appearance. Ability to drive safely is usually related to blood alcohol level, while outward appearance depends in part on a person's tolerance to alcohol, which varies among individuals and even within individuals.

In California, civil liability cannot be based on furnishing alcoholic beverages to an intoxicated person. (Bus. & Prof. Code, § 25602, subd. (b); Civ. Code, § 1714, subds. (b), (c).) The single statutory exception is the serving of alcohol to an "obviously intoxicated minor."[2] (Bus. & Prof. Code, § 25602.1.) [3] In order for O. B. to be held liable in this case, it was necessary for Jones to prove that Purser was obviously intoxicated when he was served.

The challenged instruction was taken from dicta in *Paula* v. *Gagnon* (1978) 81 Cal.App.3d 680, 686 [146 Cal.Rptr. 702], which states: "The use

---

[1] The jury instruction, as read, states: "Liability of O.B.'s Board cannot result from serving alcohol to a minor who is *not* obviously intoxicated, even though it develops that the minor was under the influence of intoxicating liquor within the meaning of Vehicle Code Section 23153(a), the statute just read to you. The use of alcohol and its effect required to place a person in violation of Vehicle Code Section 23153(a) that is, 'under the influence of intoxicating liquor,' is substantially less than that required to be 'obviously intoxicated' pursuant to Business and Professions Code Section 25602.1. Although the obviously intoxicated person is necessarily under the influence of intoxicating liquor, the reverse is not necessarily true."

[2] Before 1971, there was no civil liability for serving obviously intoxicated persons. Civil liability was judicially imposed, starting with *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], and broadened with *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719] and *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669]. This broad civil liability was repealed by the Legislature in 1978 by the enactment of Business and Professions Code section 25602, subdivisions (b) and (c) (Stats. 1978, ch. 929, § 1), which left this single exception. Consequently, obvious intoxication has not been clearly defined.

[3] Business and Professions Code section 25602.1 states in part: "Notwithstanding subdivision (b) of Section 25602, a cause of action may be brought by or on behalf of any person who has suffered injury or death against any person licensed, or required to be licensed, pursuant to Section 23300 . . . who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic beverage . . . to any obviously intoxicated minor where the furnishing, sale or giving of that beverage to the minor is the proximate cause of the personal injury or death sustained by that person."

of alcohol and its effect required to place a person in violation of Vehicle Code section [23152], that is, *under the influence of intoxicating liquor,* is substantially less than that required to be *obviously intoxicated* pursuant to Business and Professions Code section 25602. Although the obviously intoxicated person is . . . under the influence of intoxicating liquor, the reverse is not necessarily true." The second sentence quoted is correct; however the first is incorrect. There is no ranking of the two standards in the language of the statutes or otherwise and are applied in different situations.

The standard jury instruction as to under the influence states in part: "A person is [under the influence of intoxicating liquor] [under the combined influence of intoxicating liquor and a drug] [under the influence of a drug] when as a result of [drinking such liquor] [and] [using a drug] his or her physical or mental abilities are impaired to the extent that such person is not able to drive a vehicle in the manner that a person of ordinary prudence would drive under the same or similar circumstances." (BAJI No. 5.40; see *People* v. *Schoonover* (1970) 5 Cal.App.3d 101, 105-107 [85 Cal.Rptr. 69].) This is a standard for determining whether a person is capable of driving safely. Because of a demonstrated relationship between blood alcohol level, reaction time and coordination, the Legislature has established rebuttable presumptions of whether a defendant is under the influence for purposes of the Vehicle Code depending on a person's blood alcohol level. (Veh. Code, § 23155.)

Although Vehicle Code section 23155 and Business and Professions Code section 25602.1 deal with related problems, the purposes behind the statutes are different. The Vehicle Code outlaws driving while under the influence. Obvious intoxication, on the other hand, is a standard used to determine whether a licensed server of alcohol may be held civilly liable for injuries proximately caused from serving alcohol to a minor in such a condition.[4] To impose liability under the latter statute, the injury need not be caused by the obviously intoxicated minor driving a motor vehicle. (See *Chalup* v. *Aspen Mine Co.* (1985) 175 Cal.App.3d 973, 974-975 [221 Cal.Rptr. 97] [the owners of a bar could be sued for serving an obviously intoxicated minor who was struck by a car when she crossed the street against the signal].) Under tort law, the plaintiff must be able to point to visible signs of intoxication, otherwise we would be imposing strict civil liability upon any license holder for damages arising out of the sale of alcoholic beverages to any minor. In carving out this exception to the general rule of civil immunity, the Legislature did not mean to create this

---

[4] Serving alcohol to *any* obviously intoxicated person, adult or minor, may also serve as grounds for disciplining a liquor licensee. (See *Rice* v. *Alcoholic Bev. etc. Appeals Bd.* (1981) 118 Cal.App.3d 30 [173 Cal.Rptr. 232].)

anomalous result. (See *Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 724-725 [209 Cal.Rptr. 347, 691 P.2d 1013].) A bartender or waitress is not expected to test the patron's blood alcohol level or his level of coordination before serving him. Being "under the influence" for purposes of the Vehicle Code is not comparable with "obvious intoxication" under the Business and Professions Code. Evidence of blood alcohol level may be circumstantial evidence of the minor's outward appearance, but it is not dispositive since reaction to alcohol and tolerance differ among persons, and change even within a person depending on that person's physical condition and other factors at any particular time. In fact, a minor may be "obviously intoxicated" from the use of drugs, and service to a minor in this condition would still violate the statute. (See generally, *Rice* v. *Alcoholic Bev. etc. Appeals Bd.*, *supra*, 118 Cal.App.3d at pp. 36-38.) The weight to be given evidence of blood alcohol levels rests with the factfinder.

▇▇ As instructed by the court, the jury was told to consider several outward manifestations of obvious intoxication, which included incontinence, unkempt appearance, alcoholic breath, loud or boisterous conduct, bloodshot or glassy eyes, incoherent or slurred speech, flushed face, poor muscular coordination or unsteady walking, loss of balance, impaired judgment, or argumentative behavior. (See *People* v. *Smith* (1949) 94 Cal.App.2d Supp. 975, 976 [210 P.2d 98]; *Coulter* v. *Superior Court, supra,* 21 Cal.3d at p. 155.) This instruction was correct.

It was error to instruct that there is a range of intoxication, beginning at "under the influence" and reaching "obvious intoxication" with a substantially greater amount of alcohol. A person who is obviously intoxicated is necessarily under the influence of alcohol regardless of his blood alcohol level. A person incapable of maintaining the appearance of sobriety would be incapable of handling a motor vehicle in a careful and competent manner.

Depending on the individual and his condition, he may have a blood alcohol level of 0.10 percent (the level at which "under the influence" is statutorily presumed), but he may not manifest behavior so as to be considered obviously intoxicated. A person's individual tolerance and reaction depend on numerous factors, including the amount of sleep that person has had, the last time that person ate any food, whether that person is taking medication and what type, to name only a few. Simply put, some people hold their liquor better than others. Thus, the instruction is wrong in stating that the level of alcohol needed to prove a person is "under the influence" is substantially less than that amount necessary to prove that same person to be "obviously intoxicated." This instruction does not permit the jury to give the proper weight to the blood alcohol evidence.

B

■ Instructional error alone is insufficient to overturn a jury verdict. The defendant must also show the error was prejudicial (Code Civ. Proc., § 475) and resulted in a "miscarriage of justice." (Cal. Const., art. VI, § 13.) " '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' [Citation.]" (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 770 [206 Cal.Rptr. 354, 686 P.2d 1158].)

Several factors to be considered in determining whether the instructional error was prejudicial are: "(1) the degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations]." (*LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946]; see also, *Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1069-1070 [232 Cal.Rptr. 528, 728 P.2d 1163]; *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 771.)

■ Here, plaintiff argues that the error was prejudicial since the jury had "no choice but to believe that unless Purser's blood alcohol level was 'substantially more' than the legal limit of .10, as a matter of law he could not be found to be 'obviously intoxicated' when he was served at O.B.'s Board."

We note initially that at no time during the presentation of evidence, the closing arguments or the instructions, was the jury informed that a person with a blood alcohol level of 0.10 percent is statutorily presumed to be under the influence of alcohol. The only instruction as to under the influence was the one quoted above (BAJI No. 5.40). Therefore, the jury could not reasonably have been misled to believe that simply due to Purser's blood alcohol level he could not have been obviously intoxicated.

The critical issue was Purser's outward appearance at O.B. The direct evidence is in O.B.'s favor. Dowdle testified that the three boys sat by themselves during the brief time they were in the bar. They were on their best behavior and avoided conversation with the employees, except to order drinks from the bartender. The bartender testified that he did not remember

serving them. Based on this showing, plaintiff has failed to produce any evidence of outward behavior which would cause the bartender to conclude Purser was "obviously intoxicated."

Purser's blood alcohol level is indirect evidence and is only marginally relevant to the issue of obvious intoxication. (Cf. *People* v. *Johnson* (1947) 81 Cal.App.2d Supp. 973, 975-976 [185 P.2d 105].) There is no sharply conflicting evidence which would otherwise compel reversal. (See *LeMons* v. *Regents of University of California, supra,* 21 Cal.3d at p. 876; cf. *Pool* v. *City of Oakland, supra,* 42 Cal.3d at pp. 1070-1071.) It is not reasonably probable the jury found, on the one hand, that Purser had exhibited symptoms of "obvious intoxication," but on the other hand conclude that plaintiff be barred from recovering because Purser's blood alcohol level was not "substantially" higher than the legal limit of 0.10 percent. (See *Pool, supra,* at pp. 1069, 1072; *LeMons, supra,* at p. 876.)

It may reasonably be concluded that defense counsel's argument increased the harmful potential of the improper instruction. Counsel alluded to the difference between obvious intoxication and being under the influence. Some of the argument was devoted to the wide range of Purser's estimated blood alcohol level while at the bar, between 0.065 percent to 0.14 percent. Defense counsel repeated, three times, the incorrect statement of law that the blood alcohol level needed to be "under the influence" is "substantially less" than that required to be found obviously intoxicated. Since there was virtually no direct evidence of Purser's behavior and the minor's blood alcohol level is only marginally relevant, even if it is viewed in the light most favorable to plaintiff's position, any error was de minimis.

The jury did ask to have the instructions on "obvious intoxication" reread. Any prejudice was mitigated by the rereading of the proper instruction listing the outward signs of obvious intoxication. Read together, the jury most likely understood that Purser's blood alcohol level was relevant to a determination of his outward manifestations when he was at the bar, but that it was not dispositive. Considering all of the evidence and the unanimous verdict of the jury, we conclude the error in the instruction had little or no effect on the critical issue of obvious intoxication. The error was harmless.

II-IV*

. . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 364.

The judgment is affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied February 23, 1988, and appellant's petition for review by the Supreme Court was denied April 20, 1988.