[No. D014860. Fourth Dist., Div. One. Apr. 14, 1993.]

SHARON A. SCHAFFIELD, Plaintiff and Appellant, v.
PIERRE G. ABBOUD et al., Defendants and Respondents.

1134

**COUNSEL**

Dale A. Hilmen for Plaintiff and Appellant.

Ault, Deuprey, Jones & Gorman, Gary E. Davis, Keren L. Azoulay and Martin E. Costello for Defendants and Respondents.

**OPINION**

**TODD, Acting P. J.**—Plaintiff Sharon A. Schaffield appeals from a verdict in favor of defendant Pierre G. Abboud, doing business as AM/PM Mini

Market, on Schaffield's action against Abboud for negligently selling an alcoholic beverage to an obviously intoxicated minor. Schaffield contends the court erred in (1) improperly instructing the jury on the definition of obvious intoxication, (2) granting Abboud's motion *in limine* to exclude Schaffield's proffered evidence of Abboud's habit and custom to serve alcohol to minors without checking for identification, and (3) using the term "proximate cause" instead of the term "legal cause" in BAJI No. 4.50.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 5, 1988, at approximately 6:30 p.m., Timothy Smallwood, a minor, purchased some champagne from Abboud's minimarket in La Jolla. Smallwood and three friends, Kenneth Blunt, Kathryn Tribolet and Donnay Siegel, went to Wind and Sea Beach. While at the beach, Smallwood testified that, between 6:45 and 7:30 p.m., he drank 30 to 35 percent of one and three-quarters bottles of champagne; approximately 60 percent of one bottle. Contrary to Smallwood's testimony, Kenneth Blunt and Kathryn Tribolet, who were with Smallwood at Wind and Sea Beach, testified only one bottle of champagne was consumed at the beach rather than two.

The four then went to the Oshi Restaurant where Smallwood and the others ate dinner. The record reflects conflicting testimony with regard to the amount of alcohol Smallwood consumed with dinner. Smallwood testified that he drank one, possibly two, 20-ounce bottles of Japanese beer. However Smallwood's deposition taken prior to trial reflects that he drank a 16-ounce bottle of beer with dinner. Donnay Siegel and Kathryn Tribolet testified that Smallwood appeared sober while they were with him. After leaving the restaurant, he went to his friend's house to get his car and then drove to the All Hallows Church.

Smallwood testified that he left All Hallows Church around 9:30 p.m. and drove to the beach, stayed a while, then drove to a friend's house, discovered that the friend was not home and then drove to Abboud's minimarket, arriving at approximately 10:30 p.m. Smallwood entered the store and purchased a 40-ounce bottle of Mickey's beer. Smallwood was not asked for any identification. Smallwood testified that, after he purchased the beer, he walked outside the store into the parking lot, took a few sips of beer from the bottle and then put the bottle down and urinated in the alley next to the minimarket. While he was urinating, the bottle tipped over and the beer spilled out. Smallwood denied having anything more to drink after he left the minimarket.

Smallwood then left the minimarket and drove to a friend's house, which was near the beach at La Jolla Shores. He then met up with Kyle Kraus and

Joshua McNally and followed them to the beach at the Shores. Smallwood denied having anything to drink while he was at the Shores and he denied bringing anything with him to drink at the Shores. However, Kyle Kraus testified that while they were at the Shores, Smallwood had a 32-ounce bottle of Miller's beer. Kraus testified that when Smallwood arrived at the beach, he got out of his van with an open bottle of beer. Joshua McNally also testified that Smallwood had a beer with him which he shared with the others at the shore. Kyle Kraus testified that Smallwood told him he obtained the beer from the AM/PM. Kraus further testified that while he was with Smallwood at the beach, Smallwood did not stumble, had no trouble communicating or speaking, was not slurring his speech, and presented himself nicely.

After 10 to 15 minutes at the beach, Smallwood and the others decided to go to a party on Torrey Pines Road. Smallwood followed McNally and Kraus in separate vehicles to the party. Smallwood returned to the beach and then drove back to the party. Around 11:10 p.m., Smallwood was driving northbound on Torrey Pines Road when he struck Schaffield who was driving her motor scooter. As a result of the collision, Schaffield sustained severe personal injuries.

Schaffield sued Abboud alleging that Abboud negligently sold an alcoholic beverage to Smallwood, an obviously intoxicated minor.[1] The action was tried before a jury and culminated in a judgment in favor of Abboud and against Schaffield.

Prior to trial, the court granted Abboud's motion *in limine* to exclude the testimony of Smallwood and other minors who were to testify on Schaffield's behalf that on prior occasions they had purchased alcohol from Abboud's minimarket without being checked for identification on the ground that the proposed testimony was inadmissible to prove conduct on a specified occasion.

During the trial Schaffield presented expert testimony from Richard G. Whalley, a forensic scientist and toxicologist, regarding Smallwood's blood-alcohol content (BAC) on the day of the accident. The defense called Martin

---

[1] The judicially imposed civil liability for serving obviously intoxicated persons (*Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151]; *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144 [145 Cal.Rptr. 534, 577 P.2d 669]) was repealed by the enactment of Business and Professions Code section 25602. The sole exception is provided by Business and Professions Code section 25602.1, which states in part: "Notwithstanding subdivision (b) of Section 25602, a cause of action may be brought by or on behalf of any person who has suffered injury or death against any person licensed, or required to be licensed, pursuant to Section 23300 . . . who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic beverage, . . . to any obviously intoxicated minor where the furnishing, sale or giving of that beverage to the minor is the proximate cause of the personal injury or death sustained by that person."

Fink, a criminalist with the San Diego County Sheriff's Department. Whalley testified that, given Smallwood's known BAC of .10 to .11 percent at 1:10 a.m.,[2] and assuming a "burn off rate" of .02 percent per hour, Smallwood's BAC at the time of the sale at 10:30 would have been between .13 and a .15 percent. In rendering this opinion, Whalley was asked to assume the following additional facts: Between 6:30 p.m. and 7:15 p.m., Smallwood consumed 30 percent of a bottle and three-quarters of champagne; that after the champagne he consumed two 20-ounce bottles of beer with dinner; Smallwood had a gulp of beer at 10:30 p.m., and at least one more sip of beer between 10:30 and the accident at 11:10 p.m.

Whalley further testified that, assuming Smallwood consumed 30 percent of one bottle of champagne and one 16-ounce bottle of beer with dinner, his BAC at 10:30 p.m. would have been .08 percent. And, assuming Smallwood had nothing further to drink aside from another gulp of beer plus a few sips of beer at La Jolla Shores, Smallwood's BAC at 1:10 a.m. would have been zero. Therefore, for Smallwood to have had a BAC of .10 percent at 1 a.m., more alcohol would have to have been consumed—approximately six more drinks—to reach a .10 percent by 1 a.m.

Finally, Whalley opined that, with a BAC of .14 to .15 percent, Smallwood would have exhibited signs of obvious intoxication at the time of the sale; specifically redness of the eyes and alcoholic breath.

Fink testified that, assuming Smallwood consumed 35 percent of one and three-quarters bottles of champagne between 6:30 and 7:30 p.m., his BAC would have peaked at .07 to .08 percent around 8:15 p.m. Assuming Smallwood consumed one 16-ounce bottle of beer at the sushi restaurant between 8 and 9 p.m., his BAC would have peaked at .06 to .07 percent around 9:45 p.m. Fink used a "burn off" rate of approximately .18 percent per hour. At that rate, Smallwood's BAC would have reached zero 4 to 5 hours later. Since Smallwood had a known BAC of .10 percent at 1:10 a.m., and considering no alcohol was consumed after the accident at 11:10 p.m., Smallwood would have had to consume an additional 40 ounces of beer between 10:30 and 11:00 p.m. to reach a BAC of .10 percent by 1:10 a.m.

Fink testified that even if Smallwood had consumed two 16-ounce beers at the restaurant, he would have peaked at .09 to .10 percent at 9:45 p.m. When the food eaten at the restaurant was taken into account, Fink calculated that Smallwood's BAC would have peaked at .08 to .09 percent around 11

---

[2] A blood sample was taken from Smallwood at 1:10 a.m. on August 6, 1988, by Patricia Hess, a forensic alcohol analyst for the San Diego Police Department Crime Lab. The test revealed a BAC in the range of .10 to .11. The parties stipulated as to the results of the test.

p.m. Even if Smallwood had entered the minimarket with a BAC of .10 percent, Fink opined that Smallwood would not have exhibited physical signs of intoxication. Assuming two bottles of beer consumed at dinner, Smallwood still would have had to consume an additional 35 to 38 ounces of beer between 10:30 and 11 p.m. to reach a BAC of .10 percent by 1:10 a.m.

Both experts agreed that redness in the eyes would be present between .05 and .10 percent BAC. The experts further agreed that alcoholic breath is a symptom consistent with a .10 percent BAC.

Following closing arguments, both counsel submitted proposed instructions defining "obvious intoxication." The defendant's special instruction was accepted by the court and offered to the jury with some modifications. The following instruction was given:

"The term 'obvious intoxication' as used in these instructions refers to visible and outward manifestations of intoxication, which include incontinence, unkempt appearance, alcoholic breath, loud or boisterous conduct, bloodshot or glassy eyes, incoherent, slow, deliberate or slurred speech, flushed face, poor muscular coordination, unsteady or slow and deliberate walk, loss of balance, impaired judgment or argumentative behavior. For an individual to be obviously intoxicated, he must exhibit one or more of these outward and visible signs of intoxication sufficiently to cause a reasonable person to believe that he is intoxicated. It is not sufficient proof to merely show that an individual had been drinking."

Schaffield's instruction, which was refused, provided in part that:

"[T]he use of intoxicating liquor by a minor in such quantity as to produce intoxication causes many commonly known outward manifestations which are plain and easily seen or discovered. . . .

"[I]f outward manifestations *existed* and the seller still served the minor, *he has violated the law whether this was because he failed to observe what was plain and easily seen or discovered, or because, having observed, he ignored what was apparent.*"

The court also instructed the jury using the term "proximate cause" as contained in BAJI No. 4.50 over Schaffield's objection that the word "legal cause" should be used as an alternative.

The jury returned a special verdict finding (1) Abboud sold an alcoholic beverage to Smallwood, but (2) Smallwood was not obviously intoxicated at the time of the sale. Accordingly, the jury did not determine whether Abboud's conduct was a proximate cause of Schaffield's injuries.

## DISCUSSION

### A.  *The Trial Court's Instruction Properly Defined "Obvious Intoxication."*

■■■ Schaffield contends the jury was improperly instructed on the definition of "obvious intoxication." The trial court's instruction, set forth above, required the jury to determine (1) whether Smallwood exhibited one or more signs of intoxication, and (2) whether those signs exhibited by Smallwood were sufficient to cause a reasonable person to believe Smallwood was intoxicated. Schaffield takes issue with the second prong of the instruction and contends, in order to establish "obvious intoxication," she need only prove outward manifestations of intoxication existed at the time of the sale and the law does not require proof the seller actually observed the outward manifestations. We disagree and hold that the standard for determining "obvious intoxication" is measured by that of a reasonable person.

*People* v. *Johnson* (1947) 81 Cal.App.2d Supp. 973, 975-976 [185 P.2d 105], overruled on other grounds in *Paez* v. *Alcoholic Beverage Control Appeals Bd.* (1990) 222 Cal.App.3d 1025, 1027 [272 Cal.Rptr. 272],[3] sets forth the proper test for determining whether a patron is "obviously intoxicated":

"The use of intoxicating liquor by the average person in such quantity as to produce intoxication causes many commonly known *outward* manifestations which are 'plain' and 'easily seen or discovered.' If such outward manifestations exist and the seller still serves the customer so affected, he has violated the law, whether this was because he failed to observe what was plain and easily seen or discovered, or because, having observed, he ignored that which was apparent." (Italics in original.)

This language does not, as Schaffield suggests, relieve a plaintiff from proving the defendant's conduct fell below the standard of care expected of a reasonable person in the same or similar circumstances. In such a case, "the plaintiff must be able to point to visible signs of intoxication . . . ."

---

[3] Both *Johnson, supra,* and *People* v. *Smith* (1949) 94 Cal.App.2d Supp. 975 [210 P.2d 98], held that the determination of "obvious intoxication" was within the *exclusive* province of the jury and it was error to admit expert testimony that an individual was obviously intoxicated. Those cases no longer correctly state the law. The *Paez* court recognized that with the adoption of Evidence Code section 805 testimony in the form of an opinion is not objectionable because it embraces the ultimate issue to be decided by the trier of fact. (*Paez, supra,* 222 Cal.App.3d at p. 1026.) However, the precedential value of *Johnson* and *Smith* remains unaffected for the purposes of this case. Here, both Fink and Whalley were allowed to give their opinions as to whether Smallwood would have been obviously intoxicated. The jury was free to disregard Whalley's testimony and conclude Smallwood was not obviously intoxicated. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [122 Cal.Rptr. 79, 536 P.2d 479].)

(*Jones* v. *Toyota Motor Co.* (1988) 198 Cal.App.3d 364, 369 [243 Cal.Rptr. 611].) The jury must then determine "whether or not [the visible signs of intoxication] are such as to be obvious to a person having normal powers of observation, and recognizable as the usual indications of an intoxicated person." (*Johnson, supra,* 81 Cal.App.2d at p. Supp. 976.) Simply put, a supplier of alcohol must use reasonable care to ensure the person receiving the alcoholic beverage is not an obviously intoxicated minor. *Johnson* requires a purveyor of alcoholic beverages to heed those symptoms of intoxication which are plain to a reasonable person having normal powers of observation. (*Id.* at p. Supp. 975.) "[A] duty is placed upon the seller, before serving the intended purchaser, to use his powers of observation to such extent as to see that which is easily seen and to hear that which is easily heard . . . ." (*Ibid.*)

While the instruction given by the trial court did not track precisely the language of *Johnson,* we conclude the instruction properly states the law; the seller is liable only where he fails to perceive warning signs of which he should have been aware, or ignores warnings of which he was in fact aware. To hold otherwise would be to impose strict liability upon the seller. (*Jones, supra,* 198 Cal.App.3d at p. 369.)

B.   *Sufficient Evidence Supports the Jury's Conclusion That Smallwood Was Not Obviously Intoxicated at the Time of the Sale.*

Since we determine the jury was properly instructed on the issue of obvious intoxication, our task is only to determine whether the verdict was supported by substantial evidence. In resolving the issue of the sufficiency of the evidence, we look only at the evidence supporting the successful party and disregard any contrary showing. (*Nestle* v. *City of Santa Monica* (1972) 6 Cal.3d 920, 925-26 [101 Cal.Rptr. 568, 496 P.2d 480].) All conflicts must be resolved in favor of the respondent. (*Campbell* v. *Southern Pacific Co.* (1978) 22 Cal.3d 51, 60 [148 Cal.Rptr. 596, 583 P.2d 121].)

Here, the jury could reasonably have concluded Smallwood's .10 percent BAC at 1:10 a.m. was due to alcohol consumed after rather than before the sale. The jury was presented with conflicting testimony regarding the amount of beer and champagne consumed by Smallwood. The evidence supports a conclusion that Smallwood drank no more than 35 percent of one and three-quarters bottles of champagne and one 20-ounce bottle of beer before the sale by Abboud. Using those assumptions, Fink testified that Smallwood's BAC would have peaked at .06 to .07 percent at around 9:45 p.m.

Furthermore, both experts testified that 30 to 35 percent of one bottle of champagne and one 16-ounce beer would have been insufficient to raise

Smallwood's BAC to .10 percent by 1:10 a.m. The testimony also showed Smallwood stopped drinking between 8:45 and 9 p.m. and thereafter may have consumed portions of a 40-ounce bottle of Mickey's and a 32-ounce Miller's. Again, the jury had sufficient evidence to conclude Smallwood consumed a substantial amount of alcohol after the sale by Abboud.

Schaffield contends that it is improbable that Smallwood consumed this quantity of alcohol between 10:30 and 11 p.m. Our scrutiny, however, is not so exacting.

█ "Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. . . . [T]here must exist either a physical impossibility that they are true, or their falsity must be apparent without resort to inferences or deductions." (*People v. Huston* (1943) 21 Cal.2d 690, 693 [134 P.2d 758], citations omitted.) █ Since Smallwood's consumption of portions of two large bottles of beer between the time of sale and the accident is neither physically impossible nor inherently improbable, we conclude there was sufficient evidence to support the jury's finding in this regard.

Finally, the jury could also reasonably have concluded Smallwood was not obviously intoxicated at the time of the sale. Although there was no direct testimony regarding Smallwood's condition at the time of the sale, both experts agreed that Smallwood probably would have exhibited redness in the eyes and possibly alcoholic breath at the time of the sale. However, Fink testified that since Smallwood's BAC was, at most, .07 percent at the time of the sale, Smallwood would not have shown physical symptoms of intoxication when he went into the minimarket to purchase the beer. Furthermore, Kyle Kraus testified that when he observed Smallwood shortly after the sale, Smallwood did not stumble, had no trouble communicating or speaking, was not slurring his speech, and presented himself nicely.

The presence of red eyes and alcoholic breath alone do not compel the conclusion that Smallwood was obviously intoxicated. █ Abboud correctly points out that no single definition of obvious intoxication exists. Here, to establish liability, Schaffield must not only prove Smallwood was intoxicated but that his intoxication was obvious. (*People v. Smith, supra,* 94 Cal.App.2d Supp. 975, 977; accord, *People v. Johnson, supra,* 81 Cal.App.2d Supp. 973, 975, both overruled on other grounds in *Paez v. Alcoholic Beverage Control Appeals Bd., supra,* 222 Cal.App.3d 1025, 1027.) █ Accordingly, we are unable to conclude that red eyes and alcoholic breath alone compel a conclusion that a person is obviously intoxicated.

■ Again, the standard to be applied is whether such outward signs of intoxication are sufficient to cause a reasonable person to believe that the one with whom he or she is dealing is intoxicated. ■ In making such a determination, the jury is entitled to consider evidence of blood-alcohol level, but such evidence is marginally relevant where there is no direct evidence of the patron's behavior at the time of the sale. (*Jones, supra,* 198 Cal.App.3d 364, 372.)

C. *No Other Ground for Reversal Is Established.*

■ Finally, we conclude any error that may have been committed by the trial court in granting Abboud's motion *in limine* or by instructing the jury on "proximate" rather than "legal" cause was harmless. The testimony sought to be produced by Schaffield would only have been relevant to prove the sale to Smallwood. Any possible harm from this ruling is moot since the jury decided in Schaffield's favor on this issue. Nor was Schaffield's position harmed by the proximate cause instruction since the jury determined Smallwood was not obviously intoxicated thus rendering a determination of proximate cause unnecessary.

DISPOSITION

The judgment is affirmed.

Froehlich, J., and Nares, J., concurred.

A petition for a rehearing was denied May 7, 1993, and appellant's petition for review by the Supreme Court was denied June 30, 1993.