[S.F. No. 23667. Apr. 26, 1978.]

JAMES STEWART COULTER et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
SCHWARTZ & REYNOLDS & CO. et al., Real Parties in Interest.

146

## COUNSEL

Dahl, Hefner, Stark & Marois, C. Afton Moore III and Judy R. Campos for Petitioners.

No appearance for Respondent.

Thornton, Taylor & Downs and Jerome F. Downs for Real Parties in Interest.

## OPINION

**RICHARDSON, J.**—We consider whether the noncommercial suppliers of alcoholic beverages may be liable to third persons injured by reason of the intoxication of the consumer of those beverages. We will conclude that a social host who furnishes alcoholic beverages to an obviously intoxicated person, under circumstances which create a reasonably foreseeable risk of harm to others, may be held legally accountable to those third persons who are injured when that harm occurs. We examine the pleading posture of the case, trace the evolution of civil liability imposed on those who furnish intoxicating liquors, and discuss the reasons for our adoption of the foregoing principle.

In the first cause of action of his complaint, plaintiff James Coulter alleged that he was injured when the car in which he was riding as a passenger collided with roadway abutments in San Mateo County. James' wife, plaintiff Deborah Coulter, joined in the action with her husband, claiming, as damages, the loss of consortium with James, and the value of nursing services furnished to him. It is alleged that at the

time of the accident, the car was being driven by Janice Williams, whose intoxication caused both the accident and James' injuries.

Plaintiffs further alleged that before the accident defendant Schwartz & Reynolds & Co., the owner and operator of an apartment complex in Foster City, San Mateo County, and defendant Monte Montgomery, the apartment manager, negligently and carelessly served to Williams, in a recreation room in the complex, "extremely large quantities" of alcoholic beverages; that defendants knew or should have known that Williams was becoming "excessively intoxicated"; that defendants knew or should have known that Williams "customarily drank to excess" and was "incapable of exercising the same degree of volitional control over her consumption of alcoholic beverages as the average reasonable person"; that defendants knew that Williams intended to drive a motor vehicle following her consumption of the alcoholic beverages furnished by defendants; and that defendants knew or should have known that their conduct would expose third persons such as plaintiffs to "foreseeable serious risk of harm."

The second cause of action, substantially identical to the first, omitted the allegation that the defendants actually "furnished" Williams with alcoholic beverages, but charged that defendant Schwartz & Reynolds & Co. "permitted" Williams to be served alcoholic beverages on their premises, and that defendant Montgomery had "aided, abetted, participated [in] and encouraged" Williams to drink to excess. The third and fourth causes of action are not at issue herein.

Defendants' demurrers to the first and second causes of action were sustained without leave to amend. ■ Plaintiffs seek mandate from us to compel the trial court to overrule the demurrers and proceed to trial on all causes of action. While we have generally been reluctant to extend extraordinary relief at the pleading stage (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379]; *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]), we have said that mandamus will lie when it appears that the trial court has deprived a party of an opportunity to plead his cause of action or defense, and when that extraordinary relief may prevent a needless and expensive trial and reversal (*Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 301, fn. 4 [90 Cal.Rptr. 345, 475 P.2d 441]). In the matter before us mandamus is available as a remedy and we inquire into the propriety of the trial court's ruling.

Before 1971, California case law had uniformly held that one who furnished alcoholic beverages to another person was not liable for damages resulting from the latter's intoxication. (E.g., *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137].) Our courts reasoned that "it is the voluntary consumption, not the sale or gift, of intoxicating liquor which is the proximate cause of injury from its use . . . ." (*Id.*, at p. 356.) In *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], however, we reconsidered our earlier position and concluded that, as to *commercial* vendors, liability would be imposed in appropriate cases for injuries occasioned to third parties by the consumer of liquor. Examining more closely the proximate cause issue, we concluded in *Vesely* that "[I]t is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person. If such furnishing is a proximate cause, it is so because the consumption, resulting intoxication, and injury-producing conduct are foreseeable intervening causes, or at least the injury-producing conduct is one of the hazards which makes such furnishing negligent." (*Id.*, at p. 164.)

██ Moreover, in *Vesely* we declared that the tavern-owner defendant owed a duty of reasonable care to members of the public by reason of a provision of the Business and Professions Code (all statutory references are to that code unless otherwise cited). We explained that because section 25602 was enacted to protect members of the general public from injuries to person and damage to property resulting from the excessive use of intoxicating liquor, a presumption of negligence arises whenever its provisions are violated. (5 Cal.3d at pp. 164-165; see Evid. Code, § 669.)

In *Vesely,* we further expressly reserved the question "whether a noncommercial furnisher of alcoholic beverages may be subject to civil liability under section 25602 . . . ." (5 Cal.3d at p. 157.) That question is now before us and, although defendants herein urge us to confine application of the *Vesely* rule to commercial vendors, we see no reasonable or logical basis for doing so. As will appear, section 25602 is not limited by its terms to persons who furnish liquor to others for profit. Furthermore, well established general negligence principles lead us to conclude, independently of statute, that a social host or other noncommercial provider of alcoholic beverages owes to the general public a duty to refuse to furnish such beverages to an obviously intoxicated person if, under the circumstances, such person thereby constitutes a reasonably

foreseeable danger or risk of injury to third persons. We examine more closely the statutory and common law bases for our conclusion.

1. *Business and Professions Code Section 25602*

Section 25602 provides, that *"Every person who sells, furnishes, gives, or causes to be sold, furnished, or given away, any alcoholic beverage to . . . any obviously intoxicated person is guilty of a misdemeanor."* (Italics added.) Referring as it does to "every person," the section on its face appears to apply to both commercial and noncommercial suppliers of alcoholic beverages. Although it might be urged that the placement of section 25602 in the Business and Professions Code suggests a legislative intent to confine the section's application to the commercial sellers of liquor only, thus excluding social hosts, other sections of the same code belie any such intent. For example, unlike section 25602, the immediately preceding section, 25601, contains specified restrictions imposed upon activities of a "licensee" as opposed to any "person." Section 23008 defines "person" as including *"any individual,* firm, copartnership, [etc.] . . ."* whereas section 23009 defines "licensee" as *"any person holding a license* issued by the department." (Italics added.) Since all commercial vendors of alcoholic beverages in this state must be licensed (see § 23300 et seq.), the use of the broader term "person" in section 25602 strongly suggests that the latter section must have been intended to apply whether or not the supplier of such beverages was engaged in commercial, and therefore licensed, activities.

The foregoing conclusion is further confirmed by other immediately succeeding sections of the code which, for example, make it unlawful for every or any "person" (1) to bring alcoholic beverages onto prison grounds (§ 25603), (2) to maintain unlicensed premises (§ 25604), (3) to transport alcoholic beverages subject to seizure (§ 25606), or (4) to possess, consume, sell, give away or deliver any such beverages on public school grounds (§ 25608). It seems very clear that the Legislature did not intend that application of these companion sections be restricted to commercial vendors or suppliers. We hold, accordingly, that the term "person" within the meaning of section 25602 is not limited to those who are commercial suppliers, but includes those who are social hosts as well.

Recent appellate interpretation of similar statutory language supports the foregoing conclusion. Construing section 25602, the appellate court in *Coffman v. Kennedy* (1977) 74 Cal.App.3d 28, 36-37 [141 Cal.Rptr. 267], reached a parallel result. The *Coffman* court reviewed cases from

other jurisdictions and stated, in dictum, that a social host would be properly subjected to civil liability under either section 25602 or general negligence principles, on allegations that intoxicating beverages were "furnished . . . to an obviously intoxicated person with knowledge that the intoxicated person was going to be driving a vehicle on the public highways." (P. 37.)

Likewise, in *Brockett* v. *Kitchen Boyd Motor Co.* (1972) 24 Cal.App.3d 87, 93 [100 Cal.Rptr. 752], the appellate court held that the comparable language of section 25658 ("every person" who gives alcoholic beverages to a minor is guilty of a misdemeanor) applies to *all* persons whether or not they are in the business of dispensing alcoholic beverages. (See also, *Ross* v. *Ross* (1972) 294 Minn. 115 [200 N.W.2d 149, 151-153]; *Williams* v. *Klemesrud* (Iowa 1972) 197 N.W.2d 614, 615-616 [64 A.L.R.3d 843]; but see *Edgar* v. *Kajet* (Sup.Ct. 1975) 84 Misc.2d 100 [375 N.Y.S.2d 548, 551-552], affd. 55 App.Div.2d 597 [389 N.Y.S.2d 631].) Additionally, *Brockett* held that violation of section 25658 could form the basis for a cause of action by a person injured as a proximate result of the minor's intoxication.

■ Nonetheless, defendants insist that the Legislature, by enacting section 25602, could not have intended to impose civil liability upon social hosts, given the long line of earlier cases which had denied liability even against commercial vendors. Such an argument, however, underestimates the historic force of our *Vesely* holding. As we have explained, in 1971 the Legislature was put on notice by *Vesely* that (1) section 25602 could form the basis for imposition of civil liability upon social hosts because, identifying the object of the statute, we recognized that it was "adopted for the purpose of protecting members of the general public from injuries to person and damage to property resulting from the excessive use of intoxicating liquor" (5 Cal.3d at p. 165); and (2) the noncommercial supplier's civil liability for a violation of section 25602 remained an open question (*id.,* at p. 157). We think it of some, but not controlling, significance that, following *Vesely,* the Legislature has failed to amend section 25602 to exclude such liability.

■ We further note that the Legislature has clearly expressed its desire that the Alcoholic Beverage Control Act shall be liberally construed to accomplish its stated purposes of "protection of the *safety, welfare,* health, peace, and morals of the people of the State, . . . and to promote temperance . . . ." (§ 23001, italics added.) Further, "It is hereby declared that the subject matter of this division [which includes

§ 25602] involves *in the highest degree* the economic, social, and moral well-being *and the safety* of the State and of all its people." (*Ibid.,* italics added.) Our interpretation of section 25602 in authorizing imposition of civil liability is entirely consistent with these broad legislative policies, and may well further induce social hosts to take those reasonable preventive measures calculated to reduce the risk of alcohol-related accidents. (See also, *Vesely* v. *Sager, supra,* at p. 165.)

For all of the foregoing reasons, we conclude that section 25602 affords a sufficient statutory basis upon which civil liability may be imposed upon a noncommercial supplier who provides alcoholic beverages to an obviously intoxicated person, thereby creating a reasonably foreseeable risk of harm to third persons.

### 2. *Common Law Principles*

Wholly apart from the provisions of section 25602, imposition of civil liability in the present case is fully compatible with general negligence principles. It is true that in *Vesely* we based the requisite *duty* to the plaintiff upon the provisions of section 25602 alone. (5 Cal.3d at pp. 164-165.) However, as we recently explained in *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313 [128 Cal.Rptr. 215, 546 P.2d 719], "Although we chose to impose liability on the *Vesely* defendant on the basis of his violating the applicable statute, the clear import of our decision was that there was no bar to civil liability *under modern negligence law.*" (P. 325, italics added.)

It has long been a fundamental principle of California law that a person is liable for the foreseeable injuries caused by his failure to exercise reasonable care. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496]; *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 739 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; see Civ. Code, § 1714.) Although we have, on occasion, described the foregoing rule as having civil rather than common law origins (*Rowland, supra,* at p. 112), the principle has most frequently been expressed in the negligence formulation that the defendant owes the plaintiff a "duty" of reasonable care. The existence of a duty is primarily a question of law, and dependent upon a variety of relevant factors, of which "foreseeability of the risk is a primary consideration . . . ." (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36].) We think it evident that the service of alcoholic beverages to an obviously intoxicated person by one who knows that such intoxicated

person intends to drive a motor vehicle creates a *reasonably foreseeable* risk of injury to those on the highway. (See *Vesely,* at p. 164.) Simply put, one who serves alcoholic beverages under such circumstances fails to exercise reasonable care.

■ We have previously identified certain factors other than foreseeability in determining the ultimate existence of a "duty" to third persons. These factors include: "... the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian, supra,* at p. 113.)

■ Application of several of the *Rowland* elements to the circumstances herein alleged fully supports a rule establishing a duty of care and imposing civil liability. Plaintiffs' injuries are asserted to be substantial, a fact we must presume as a "certainty" for purposes of reviewing the sufficiency of the complaint under well established pleading rules. (E. g., *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496 [86 Cal.Rptr. 88, 468 P.2d 216].) Where such circumstances exist, as are herein alleged, it is not difficult to discern a close connection between defendant's conduct and the injury suffered by plaintiffs. Unquestionably, as we amplify below, there exists a strong public policy to prevent future injuries of this nature, and we may assume that insurance coverage (doubtless increasingly costly) will be made available to protect the social host from civil liability in this situation. While, traditionally, no moral blame attaches to the social host who entertains his guests by serving cocktails to them, it is not unfair to ascribe such blame to anyone who increases the obvious intoxication of a guest under conditions involving a reasonably foreseeable risk of harm to others. In this connection, we further note that it is small comfort to the widow whose husband has been killed in an accident involving an intoxicated driver to learn that the driver received his drinks from a hospitable social host rather than by purchase at a bar. The danger of ultimate harm is as equally foreseeable to the reasonably perceptive host as to the bartender. The danger and risk to the potential victim on the highway is equally as great, regardless of the source of the liquor.

Finally, we do not conclude that the burden upon the noncommercial suppliers of intoxicating beverages and the consequences to the community of imposing civil liability are so serious as to justify a contrary holding. Doubtless, the spectre of civil liability may temper the spirit of conviviality at some social occasions, especially when reasonably observant hosts decline to serve further alcoholic beverages to those guests who are obviously intoxicated and perhaps becoming hostile. Nonetheless, in this context, we must surely balance any resulting moderation of hospitality with the serious hazard to the lives, limbs, and property of the public at large, and the great potential for human suffering which attends the presence on the highways of intoxicated drivers. In doing so we need not ignore the appalling, perhaps incalculable, cost of torn and broken lives incident to alcohol abuse, in the area of automobile accidents alone.

The dimensions of this cost and its catastrophic personal and economic impact in terms of vehicular accidents, are profoundly disturbing social phenomena of our time. In the year 1976 there were *257,846* adult misdemeanor arrests for drunk driving reported in California. (Cal. Dept. of Justice, Crim. Justice Profile—1976 (1976) p. 25.) Considering the fact that this number, large as it is, represents *arrests only,* and does not include the marginal or undetected drivers who have imbibed, the figure may well represent only the tip of a statistical iceberg. For the year 1976, alcohol was described as the *primary* collision factor in 28.3 percent of all *fatal* motor vehicle accidents, and in 11 percent of *injury* accidents. (Dept. of Cal. Highway Patrol (1976) Ann. Rep. of Fatal and Injury Motor Vehicle Traffic Accidents, p. 68.) Nationally, "alcohol has been associated with over half the deaths and major injuries suffered in automobile accidents each year." (Coleman, Abnormal Psychology and Modern Life (5th ed. 1976) p. 414.) Children are not excluded from this numerical avalanche of intoxicated drivers. "F.B.I. statistics show that more than 17,000 young people under 18, including 51 children, aged 10 or younger, were arrested for driving under the influence in 1975. The increase over 1970 is estimated at about 160 percent." (U.S. News and World Report (July 11, 1977) at p. 33.) In the light of the foregoing statistics, it seems readily apparent that, drained of all humor, the host's well intentioned offer of "one more for the road" may frequently bear ominous and deadly overtones. We think, in short, that the policy of preventing future harm identified by us in *Rowland* is served by requiring the exercise of reasonable restraint by the social host under the circumstances herein presented.

█ Defendants have argued that the term "obviously intoxicated" is too broad and subjective to serve as a satisfactory measure for imposition of civil liability. However, the phrase is contained in section 25602, a *criminal* statute, and the courts have experienced no discernible difficulty in applying it. (See *Samaras* v. *Dept. Alcoholic Bev. Control* (1960) 180 Cal.App.2d 842, 844 [4 Cal.Rptr. 857]; *People* v. *Smith* (1949) 94 Cal.App.2d Supp. 975 [210 P.2d 98]; *People* v. *Johnson* (1947) 81 Cal.App.2d Supp. 973, 975-976 [185 P.2d 105].) As described in *Johnson,* "The use of intoxicating liquor by the average person in such quantity as to produce intoxication causes many commonly known *outward* manifestations which are 'plain' and 'easily seen or discovered.' If such outward manifestations exist and the seller still serves the customer so affected he has violated the law, whether this was because he failed to observe what was plain and easily seen or discovered, or because, having observed, he ignored that which was apparent." (Pp. 975-976, italics in original.) We think the *Johnson* observations made in the context of a sale of liquor have equal application when the liquor is served by a noncommercial social host.

We conclude that defendants' demurrer was improperly sustained as to plaintiffs' first cause of action. █ The second cause of action, however, fails to survive a demurrer for that cause alleged only that (1) defendant Schwartz & Reynolds & Co. (the apartment owners) "permitted" Williams to drink on their premises, and that (2) defendant Montgomery (the apartment manager), in some unspecified manner, "aided, abetted, participated and encouraged" Williams to drink to excess. Since neither of these allegations asserted that defendants or their agents actually furnished liquor to Williams, no liability is imposed under the principles hereinabove set forth. (See *Bennett* v. *Letterly* (1977) 74 Cal.App.3d 901, 904-905 [141 Cal.Rptr. 682] ["furnish" within the meaning of § 25658, subd. (a), implies some *affirmative* action]; *Weiner* v. *Gamma Phi Chap. of Alpha Tau Omega Frat.* (1971) 258 Ore. 632 [485 P.2d 18, 22] [no liability for merely providing a room where alcoholic beverages are served].)

█ Moreover, we find misplaced plaintiffs' reliance upon section 315 of the Restatement of Torts to uphold the second cause of action. That section imposes upon a defendant a duty to control the conduct of another party only if the defendant bears some *special relationship* either to the party alleged to be "dangerous" or to the potential victim. (See *Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 46-47 [136 Cal.Rptr. 854, 560 P.2d 743].) Plaintiffs have alleged no facts which

would support a finding that defendants stood in any special relationship with either Williams or plaintiffs.

Let a peremptory writ of mandate issue directing respondent court to overrule defendants' demurrers to the first cause of action of plaintiffs' complaint.

Tobriner, J., and Manuel, J., concurred.

**MOSK, J.**—I concur.

While I agree with the underlying theme of the majority opinion—i.e., that under some circumstances a social host, as well as a commercial supplier of alcoholic beverages, may be held legally accountable to those injured by the excessively indulged guest—I have some problems with that portion of the opinion which approves a rigid application of Business and Professions Code section 25602.

The code section provides, in relevant part, that "Every person who . . . furnishes, gives . . . any alcoholic beverage to . . . any *obviously intoxicated person* is guilty of a misdemeanor." (Italics added.) The prohibition is against providing alcoholic beverages to one who is *already intoxicated.* The law frowns upon adding a straw to a camel's back previously broken.

When the inebriate thereafter causes injury to a third person, it can be argued that the negligence which proximately caused the injury resulted from his original intoxication, not from the additional liquor served after he had already become "obviously intoxicated." Thus I suggest that in order to hold liable the social provider of liquor, it is not enough to rely upon the provisions of section 25602. The plaintiff should be compelled to prove either (1) that the social host furnished the liquor knowing that it was likely to, and that it did, produce the *original* intoxication, or (2) that the additional liquor served to one already "obviously intoxicated" *increased* or *prolonged* the existing state of intoxication and to that extent was a proximate cause of the injury.

Other than the foregoing limitation on the application of section 25602, I subscribe to the majority opinion.

Bird, C. J., concurred.

**NEWMAN, J.**—I concur as to the first cause of action, but dissent as to the holding that the second cause of action fails to survive a demurrer. Business and Professions Code section 25602 protects people from "Every person who . . . furnishes . . . or causes to be . . . furnished . . . any alcoholic beverage . . . to any obviously intoxicated person . . . ." I agree with the majority that the words "furnishes" and "furnished" imply an affirmative act and could include the serving of alcohol to Williams, as alleged in the first cause of action. I do not agree that the encouraging of Williams' drinking, as alleged in the second cause, should never be included or that individuals who allegedly "participated and encouraged" an obviously intoxicated person's drinking should never be counted among those who caused the alcoholic beverage "to be . . . furnished."

Thus I believe that the second cause of action is sufficient to withstand demurrer.

**CLARK, J.**—I am unable to join my colleagues in charging the host for the behavior of his guest. For the reasons so clearly written in *Borer* v. *American Airlines, Inc.* (1977) 19 Cal.3d 441, 446-447 [138 Cal.Rptr. 302, 563 P.2d 858], *Cole* v. *Rush* (1955) 45 Cal.2d 345 [289 P.2d 450, 54 A.L.R.2d 1137], and *Ewing* v. *Cloverleaf Bowl* (1978) 20 Cal.3d 389, 408-412 [143 Cal.Rptr. 13, 572 P.2d 1155] (dis.opn.), the majority is incorrect in creating its new cause of action.[1]

---

[1]Yes, Virginia, our bag may truly have no bottom. (Church, *Is There A Santa Claus?*, Editorial, The New York Sun (21 Sept. 1897).)