FRED W. JONES, Jr., Judge.
Five teenage boys, following a beer party at a residence hosted by the absent resident’s minor daughter, left in an automobile and were involved in a one car accident. The driver was killed and two of the passengers were seriously injured. Parents of the latter two sued the mother of the deceased driver and her insured; the owner of the home where the party was held and his homeowner’s insurance company; and the adult who bought the beer and his insurer.
Judgment was rendered rejecting the demands and the plaintiffs appealed.
Sometime prior to October 1983 Thomas Davenport, Jr. and his wife were divorced. The mother was granted legal custody of the children, one of whom was Molly. The latter came to Ouachita Parish in 1982 to live with her father but the mother retained legal custody.
Davenport was to be out-of-town on the weekend of October 29, 1983 and understood that the 15 year old Molly would stay with neighbors. However, Molly decided to have a party at her home and had an 18 year old friend, Bryan Williams, purchase three cases of beer the day before and bring them to her house.
Sometime around 9:00 P.M. on the night of October 29, 1983, Molly’s 16 year old friend, James Ford, Jr., arrived at her house for the party and drank four or five beers. He then left and went to the Spur Station in West Monroe where he encountered 14 year old Jeffery Gresham, 14 year old Alton Hardwick, Jr., 15 year old Timothy Lowery, and 16 year old Jeffery Brewer. The latter was in his mother’s car. The boys decided to go in the Brewer vehicle to Molly’s party.
Arriving at the party, Ford and Brewer went into the house. A few minutes later the other three also went in. Each of the boys drank beer and played pool. Ford consumed a 6-pack for a total of some ten cans of beer between 9:30 P.M. and 11:20 P.M.
Becoming concerned about their midnight curfew, the five boys prepared to leave Molly’s house a little after 11:00 P.M. As they were leaving Molly offered them additional beer. They finished the cans they were drinking and took a couple of 6-packs with them. After a discussion between Ford and Brewer as to whom should drive, Brewer prevailed and the boys entered the car.
Ford was in the front seat with the driver. Gresham, Lowery and Hardwick were *50 seated in the rear. A few minutes after leaving the party and about a mile from the Davenport residence, the Brewer vehicle, traveling in a northerly direction, crested a hill and crashed into a tree on the west side of the road. Skidmarks indicated the car made a continuous swooping arc from a point near the right shoulder of the road at the crest of the hill, across the right lane of travel, then across the left lane of travel and across the west shoulder, before striking the tree. Brewer was killed upon impact and Hardwick and Gresham were seriously injured.
The parents of Gresham and Hardwick * filed suit against:
1) Sharon Brewer, the mother of Jeffery, and her liability insurance carrier, American Hardware Mutual Insurance Co., alleging that Jeffery negligently drove his car under the influence of alcohol.
2) Thomas W. Davenport, Jr. and his homeowners insurance carrier, Commercial Union Insurance Company, alleging that Molly had caused Jeffery's intoxicated condition which caused the accident.
3) Brian Williams and his insurer, American Motorist Insurance Company, alleging that Williams bought beer for Molly, a minor, knowing that she intended to distribute it to other minors.
At the trial there was testimony that while at Molly’s party, Brewer, Gresham, Hardwick and Lowery each had a couple of beers. Ford admittedly consumed a total of ten cans of beer. He became loud and boisterous and broke a light fixture with a cue stick.
The Davenport resident was located on East Puckett Lake Road in Ouachita Parish about .6 miles east of the intersection with Puckett Lake Road. The latter was generally straight but hilly. It was two lanes with narrow shoulders. At the top of the first hill after the intersection with East Puckett Lake Road there were mail boxes on the east side of the road close to the roadway.
There was testimony that as Brewer drove away from the Davenport residence he “peeled out” and upon reaching Puckett Lake Road again accelerated his vehicle. Ford testified that as Brewer approached the top of the hill he was going at a high rate of speed and moving toward the mailboxes on the right. He cautioned Brewer to slow down but, according to Ford, Brewer jerked the steering wheel to the left and then to the right, causing the rear end of the car to swing to the left, and then the accident occurred.
Ford said he might have grabbed the steering wheel before the accident but didn’t think he actually reached it. However, both Gresham and Hardwick testified that Ford later told each that he was afraid the car was going to hit the mailboxes on the side of the road and grabbed the steering wheel to prevent this, jerking the vehicle to the left and across the road.
Dr. Duborwski, expert toxologist who testified on behalf of plaintiffs, described the effect of alcohol on the brain. He explained that before physical symptoms of intoxication are apparent, a person’s judgment is impaired. The damage is more substantial with increased intake of alcohol.
Dr. Redtski, who testified for defendants on blood alcohol levels, estimated Ford’s blood alcohol level at probably .19.
In written reasons for denying liability on the part of Brewer, the trial judge stated:
“Ford’s trial testimony was even less persuasive. The Court finds that he was noticeably influenced by the beer he had drunk before and after getting together with the other four youngsters. His actions at the Davenport home were boisterous and reckless; he sought to drive the car as the group was leaving. At that point, his judgment and ability to perceive and evaluate circumstances were the least reliable of anyone in the car; and his description of the movements of the vehicle before the crash is *51 not corroborated by any evidence apart from Lowery’s talk of great speed.
Even Lowery did not perceive any veering of the vehicle and no such movements were evident by tire marks. He finally admitted being alarmed about the mailboxes and ‘reaching’ for the steering wheel.
Again, plaintiffs and the other defendants seem to assume Brewer’s fault. However, the Court’s analysis of the actual evidence — apart from assumption and unsupported inference — casts considerable doubt upon such a conclusion. Even if all inferences as to speed are accepted as urged, the total evidence clearly indicates that the leftward swerve of the car and its downhill plunge diagonally across the road were the ultimate efficient events. If the vehicle were in fact traveling at a high rate of speed, those events occurred in a very short span of time — little more than a flash. As previously found, apart from Ford’s testimony, there was no direct evidence of loss of control by Brewer before the leftward movement began, nor was there any physical evidence of swerving or weaving downhill. When Ford’s condition and his later admissions to plaintiffs are considered in this light, his action of over-reacting, grabbing the steering wheel and jerking the vehicle leftward becomes a more logical explanation of cause, more consistent with the total evidence, and thus more reasonable than the assumptions and inferences about Brewer’s actions.”
The trial judge concluded:
“Since the evidence does not establish a causal connection between the party and the beer and the accident, neither the Davenports and their insurer nor Williams and his insurer can be found liable for damages in this suit.”
Plaintiffs contend the trial court erred in 1) not holding Davenport’s homeowner’s insurance company liable since it found Ford’s drunken condition was the cause of the accident; 2) not holding that Brewer’s driving ability was impaired by alcohol and was a cause of the accident; and 3) not holding Williams’ furnishing of the beer was a cause of the accident.
The trial court, based in part on its assessment of witness credibility, made the factual finding that Brewer’s conduct in driving the car was not a cause of the accident. On the other hand, the trial court concluded that Ford, “noticeably influenced by the beer he had drunk before,” caused the accident by “grabbing the steering wheel and jerking the vehicle leftward.” After examining the record, we cannot say that either finding of fact was clearly wrong. Therefore, the trial court did not err in absolving Brewer of negligence. The critical question is whether Molly Davenport was liable because she furnished the beer which Ford drank. In other words, did Molly owe a duty which encompassed the risk that was a cause of the accident?
La.R.S. 14:91.2 makes it unlawful for any person under the age of 17 to purchase an alcoholic beverage of high or low alcoholic content. An adult may not make this purchase on behalf of a minor. LaJEt.S. 14:91.3.
In Garcia v. Jennings, 427 So.2d 1329 (La.App. 2d Cir.1983), reversing a trial court judgment, we held a cause of action was stated by allegations that adults furnished liquor to a minor and, when the minor was in an intoxicated condition, allowed him to get out of the car near a bayou where he drowned. We concluded:
“The defendants had a duty not to purchase liquor for the minor and furnish it to the minor. Having done so the defendants further had the duty to exercise some degree of control and protection for the minor’s safety.”
Also see Chausse v. Southland Corp., 400 So.2d 1199 (La.App. 1st Cir.1981), writ denied, 404 So.2d 278, 404 So.2d 497, 404 So.2d 498 (La.1981).
It is apparent from an examination of our statutory law on the subject that, as a matter of public policy, we attempt to keep alcoholic beverages out of the hands of minors, recognizing that this could result in harm both to the minor and to third parties. *52 Consequently, we conclude that Molly Davenport had a duty not to provide beer to Ford and that this duty was breached. Was the risk encountered (that Ford would grab the steering wheel and cause the accident) encompassed in the duty?
As we pointed out in Finley v. North Assurance Co. of America, 476 So.2d 837 (La.App. 2d Cir.1985):
“Foreseeability is not always a reliable guide, and certainly it is not the only criterion for determining whether there is a duty-risk relationship. Just because a risk may foreseeably arise by reason of conduct, it is not necessarily within the scope of the duty owed because of that conduct. Neither are all risks excluded from the scope of duty simply because they are unforeseeable. The ease of association of the injury with the rule relied upon, however, is always a proper inquiry. Prosser, Law of Torts (3rd. ed. 1964), 282 ff.
Where the rule of law upon which a plaintiff relies for imposing a duty is based upon a statute, the court attempts to interpret legislative intent as to the risks contemplated by the legal duty, which is often a resort to the court’s own judgment of the scope of protection intended by the Legislature. Dixie Drive-It-Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 [La.1962]; Pierre v. Allstate Ins. Co., 256 La. 471, 242 So.2d 821 (La.1970); Hill v. Lundin & Associates, Inc., 260 La.2d 542, 256 So.2d [620] 622 (1972).
There is no test or rule by which the extent of the duty may be determined. Instead, scope of duty questions are to be resolved by inquiring into the purpose of the rule and into whether the particular plaintiff is among those persons the rule was designed or intended to protect. The inquiry has become established or known as the duty-risk analysis, of which foreseeability is but one factor, not necessarily controlling. The analysis is merely an analytical technique to be employed in an area of the law that requires careful reasoning and articulation, and is not itself a rule or test.”
As can be seen from the following cases, courts of other jurisdictions have addressed this question of the liability of a host for serving alcoholic beverages to minors.
The Supreme Court of California concluded that a social host owes a duty to the general public to refuse to furnish alcoholic beverages to an obviously intoxicated person if, under the circumstances, such person thereby constitutes a reasonably foreseeable danger or risk of injury to third persons. Coulter v. Superior Court of San Mateo County, 21 Cal.3d 144, 149-150, 145 Cal.Rptr. 534, 577 P.2d 669 (1978). The court in Kelly v. Gwinnell, 96 N.J. 538, 476 A.2d 1219 (1984) held the social host liable who directly serves the guest and continued to do so even after the guest was visibly intoxicated.
In Washington the court in Halligan v. Pupo, 37 Wash.App. 84, 678 P.2d 1295 (1984), found that at an office party it was not a tort to give alcohol to normal able bodied men, but the court also noted, that if the guest is obviously intoxicated the social host has a duty not to provide additional liquor.
In Massachusetts the court in McGuiggan v. New England Tel. & Tel. Co., 398 Mass. 152, 496 N.E.2d 141 (1986), found that liability can be imposed on a social host, but affirmed a motion for summary judgment in favor of the third party defendant social host on the facts before them. In this case, a high school graduation party, supervised by parents of the honoree, provided alcohol to the guests, one of whom was their minor son. The minor proceeded to leave the party in an automobile with an adult guest who was intoxicated. The intoxicated minor stuck his head out of a window to vomit while the car was traveling close to the edge of the road. The minor’s head hit a cement post on the sidewalk and he died from those injuries.
The court stated that where the social host unreasonably created a risk of injury to a person who the social host should have reasonably foreseen might cause injury to himself or to others as a result of intoxication, the social host would be liable. The *53 case cited several cases which imposed social host liability for the adverse consequences of serving alcoholic beverages to a minor. Sutter v. Hutchings, 254 Ga. 194, 198, 327 S.E.2d 716 (1985); Brattain v. Herron, 159 Ind.App. 663, 676, 309 N.E.2d 150 (1974); Longstreth v. Gensel, 423 Mich. 675, 674-695, 377 N.W.2d 804 (1985); Walker v. Key, 101 N.M. 631, 635, 686 P.2d 973 (Ct.App.1984); Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity, 258 Or. 632, 643, 485 P.2d 18 (1971); Congini v. Portersville Valve Co., 504 Pa. 157, 162-163, 470 A.2d 515 (1983).
The Georgia court in Sutter v. Hutchings, supra, extended the standard of conduct established by their statutes to protect third parties as well as already intoxicated adults and minors from injuries incurred by a social host serving alcohol. The court stated that when alcoholic beverages are sold by a tavern keeper to a minor or to an intoxicated person, the unreasonable risk of harm, not only to the minor or the intoxicated person, but also to members of the traveling public, may be readily recognized and foreseen. It cited the California court in Coulter, supra, as saying that the service of alcoholic beverages to an obviously intoxicated person by one who knows that such intoxicated person intends to drive a motor vehicle creates a reasonably foreseeable risk of injury for those on the highway. Furthermore, the court said that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person. Rhetorically the court posed the question: Which is the more valuable right, the right to serve alcohol to one’s underage high school friends, or the right not to be killed by an intoxicated minor?
The Indiana court in Brattain v. Herron, supra, found that where a social host served 20 year olds (legal drinking age was 21) for a period of four hours, knowing that the guests were underage, the host was liable for injuries suffered in an automobile accident involving the minors. Here, the host was in and out of her apartment and physically did not serve the young men, but made it available for them to serve themselves. She made no objections to their drinking or to their taking beer with them when they left.
Michigan extended its statute dealing with commercial providers to include the social host where a minor was served alcohol at a wedding reception in Longstreth, supra. The court stated that the raising of the drinking age indicated that the people of that state had made a public policy determination that persons under 21 years of age should not possess alcohol for the purpose of personal consumption. Second, other persons should have been prohibited from selling or from giving away alcohol to those under 21 years of age. The court found that the act did more than merely regulate the liquor traffic, it established policy for public health, safety and morals.
In Oregon, the court in Wiener v. Gamma Phi Chapter of Alpha Tau Omega Fraternity, supra, found that there was liability under the tort theory of negligence. Here the fraternity served minors alcohol knowing that they would have to travel in a vehicle away from the party. Where a guest passenger was injured in an automobile accident caused by the intoxication of the minor driver, damages were allowed.
The court noted that liability will rest with the social host especially where the host has reason to know that he is dealing with persons whose characteristics make it especially likely they will do unreasonable things. The fraternity as a host had a duty to refuse to serve alcohol to a guest when it would be unreasonable under the circumstances to permit him to drink. The court found that the fraternity had a responsibility to prevent the minor guests from voluntarily making themselves a hazard to themselves or others.
The court in Baird v. Roach, Inc., 11 Ohio App.3d 16, 462 N.E.2d 1229 (1983), stated that in Ohio a social host can acquire liability for the giving of liquor. However, on the facts of that case it found no liability.
The Wisconsin court in Koback v. Crook, 123 Wis.2d 259, 366 N.W.2d 857 (1985), *54 found that the host of a graduation party who gave a minor driver of a motorcycle alcoholic beverages was liable for the injuries to a third party. The court found that the minor’s consumption of alcohol was the cause of the injury to the third party. Specifically, the court found that where a minor is concerned there is no reason to distinguish between a commercial provider and a social host. The drunk minor and the social host were dubbed joint tort-feasors. The court said that social justice and common sense require that the social host must see that his guest does not partake too much of his generosity.
The duty of any person is the obligation of due care to refrain from any act which would cause foreseeable harm to others even though the nature of that harm or the identity of the harmed person or harmed interest is unknown at the time of the act. The court stated that a party is negligent when he commits an affirmative act where some harm to someone is foreseeable. Once negligence is established, the defendant is liable for unforeseeable consequences as well as foreseeable ones. Additionally, he is liable to unforeseeable plaintiffs.
The Michigan court in Klotz v. Persenaire, 138 Mich.App. 638, 360 N.W.2d 255 (1984), found liability for the social host who served an 18 year old alcohol. The drinking 18 year old jumped or dove off of a power boat into a lake and never resurfaced.
Molly Davenport made available to the minor, Ford, a quantity of beer which had obviously resulted in an intoxicated condition. She saw that Ford was leaving in a motor vehicle with other minors, but offered them additional beer. She provided the alcohol to the minors even though, as the trial judge commented, Molly “had continuing prohibitions against drinking.” Under the circumstances, we conclude that the risk encountered — Ford, though not driving, would act in an irresponsible manner in the car — was included in the duty owed by Molly Davenport. That this was a cause-in-fact of the accident is obvious, as stated by the trial judge.
For these reasons, we find that Molly Davenport was liable for plaintiffs’ damages, and consequently, her father’s homeowner’s insurance company is cast. Since Molly’s parents had been divorced and her legal custody awarded to her mother, Davenport was not vicariously liable for her torts. Audubon Ins. Co. v. Fuller, 430 So.2d 343 (La.App. 3d Cir.1983); Flannigan v. Valliant, 400 So.2d 225 (La.App. 4th Cir.1981), writ denied, 400 So.2d 611 (La.1981).
Conversely, although Williams breached a duty in buying the beer for Molly the day before the party, the risk encountered was not included in that duty. It was not shown that the facts which were within the knowledge of Molly were available to Williams. Therefore, the trial judge did not err in absolving Williams of liability.
The next question is that of damages.
Gresham’s injuries consisted of lacerations, a concussion, collapsed lung, fractured pubic bone, dislocation of the right pelvis, fracture of the right femur, liga-mentous injury to the right knee, a protruding fracture of the left femur, fracture of the left tibia with flail knee, and subsequent amputation of the left leg below the knee due to ischemic gangrene. He was hospitalized for approximately two months initially and was under a physician’s care for more than one year.
As a result of his injuries Gresham underwent ten major surgical procedures. He suffers from recurring sores on the stump of his amputated leg and permanent disabilities of 80-90% of his left leg and 10-15% of his right leg. The youth’s physician, Dr. Nawas, was of the opinion that Gresham cannot stand or walk more than an hour at a time and should not attempt any work which requires lifting, pushing, pulling, climbing, squatting, or working at heights. It was established that Gresham will incur prosthesis replacement expenses of $54,592 over the remainder of his life.
Based on this evidence, we fix the damage award to Gresham as follows:
General damages. $250,000
*55 Future special damages... 54,592
Loss of earning capacity 150,000
Total $454,592
Gresham’s parents incurred medical expenses in the sum of $111,871.08, for which they are entitled to judgment. Their claim for loss of consortium is disallowed for lack of adequate evidence.
Hardwick suffered assorted lacerations, a broken left wrist, a broken left hand, a broken right leg, nerve damage to right shoulder, and loss of vision in his right eye. He was put under general anesthesia on four separate occasions for major medical procedures. Hardwick was hospitalized for 30 days and was on crutches for a number of weeks. His physician testified that Hardwick has a 20% permanent partial disability in his right shoulder and arm.
The loss of vision in Hardwick’s right eye was not discovered by his family or doctor until some time after the accident, although his mother said she told one of the physicians about the youth’s eye complaints while he was in the hospital. The loss of sight was discovered in April 1986. Hardwick explained that he had not complained about the problem for fear that he could not get a driver’s license and might have to wear glasses. He also stated that he had lost his vision in the eye either while still in the hospital or shortly thereafter.
Dr. Haik, ophthalmologist, testified that Hardwick has no vision in his right eye due to optic nerve atrophy, which usually is caused by severe head trauma. He stated that if the youth had good vision before the accident and suffered a loss of vision after the accident, the most likely cause was blunt trauma to the head during the accident. There was evidence that before the accident Hardwick’s vision was 20/20. There was no evidence that the youth had suffered head trauma other than in the accident.
Under the circumstances, we fix the damages due to Hardwick as follows:
General damages. $125,000
Loss of earning capacity 100,000
Total $225,000
Hardwick’s mother incurred medical expenses in the amount of $30,619.16, of which Blue Cross paid $28,713.74 and intervened for reimbursement. Mrs. Hard-wick’s claim for loss of consortium is disallowed for lack of adequate evidence.

Decree

For the reasons set forth, there is judgment on behalf of plaintiffs and intervenor, against the defendant, Commercial Union Insurance Company, with legal interest from date of judicial demand until paid as follows:
1) In favor of Jeffery Gresham for $454,-592;
2) In favor of Buck Gresham and Lonnae Gresham for $111,871.08;
3) In favor of Alton Hardwick, Jr. for $225,000;
4) In favor of Sandra Hardwick for $1,905.42;
5) In favor of intervenor, Blue Cross, for $28,713.74
As to other defendants, the judgment of the trial court is AFFIRMED.
Defendant, Commercial Union Insurance Company, is cast for all court costs, both in the trial court and on appeal.

 Gresham and Hardwick reached majority while the suit was pending and were substituted as plaintiffs, with the parents remaining to assert their parental claims.