[No. D009809. Fourth Dist., Div. One. June 14, 1989.]

MAX F. SALEM et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
KATHLEEN HOFFMAN et al., Real Parties in Interest.

[No. D009820. Fourth Dist., Div. One. June 14, 1989.]

SOUTHLAND CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
KATHLEEN HOFFMAN et al., Real Parties in Interest.

COUNSEL

Ronald F. Sceglio and Thomas J. Skane for Petitioners in No. D009809.

Frank & Freedus, James G. Lieberman and Martin D. Caprow for Petitioner in No. D009820.

No appearance for Respondent.

H. Alan Johnson for Real Parties in Interest.

## OPINION

**FROEHLICH, J.**—These petitions result from rulings by the superior court denying defense motions for summary judgment. Max F. Salem, Barbara Salem and Tad Dambrosi constitute one set of petitioning defendants; Southland Corporation is the other petitioning defendant. Since the petitions relate to the same superior court case, and since they raise the same principal issue, we consolidated them for purposes of consideration and rendition of our opinion. Our review is based upon the specific jurisdiction conferred by Code of Civil Procedure section 437c, subdivision (*l*).

### FACTS

The facts upon which the denials of summary judgment were premised appear to be largely agreed. We take our facts from those presented in the answers to the petitions, which we presume to have stated the facts in the light best suited to the plaintiffs' case.

Machado and George, both minors, were drinking beer during the evening of March 16, 1987. They had drunk, during a three-hour period, in approximately equal amounts, some twenty-one cans of beer. They then drove to the College 7-Eleven Store, which was owned by Southland. The store was franchised to the Salems, and on the evening in question was being manned by clerk Dambrosi. George entered the store, walked to the beer cooler at the rear of the store, removed a twelve-pack of beer, carried it to the counter, paid for it, and walked out with it. He and Machado then drank a beer each while at the store parking lot, and drove off. The car was Machado's, and Machado was driving. An accident ensued which resulted in the death of David Hoffman, husband and father to the real parties in interest (Hoffman). Blood tests of Machado taken two hours later indicated he was legally intoxicated. His drunk driving was the proximate cause of the accident.

### ISSUES PRESENTED ON MOTIONS FOR SUMMARY JUDGMENT

As the result of prior sustaining of demurrers, the only cause of action remaining at the time of the summary judgment motions was based upon liability under Business and Professions Code[1] section 25602.1—liability for selling alcohol to an obviously intoxicated minor. The assertions presented by the motions for summary judgment were: 1. That section 25602.1 does

---

[1] All statutory references are to the Business and Professions Code unless otherwise specified.

not provide grounds for liability when the minor to whom the alcohol was sold did not cause the injuries.

2. That there was no triable issue of fact with respect to George's being "obviously intoxicated," as required by the statute, at the time of the sale.

3. That there was no triable issue of fact as to the existence of an agency between the franchisees of the market (the Salems) and Southland, and as a matter of law the liability of the former parties, if any, could not be attributable to Southland.

### DISCUSSION

As to the issue of obvious intoxication, we would defer to the trial court's ruling. Dambrosi, the clerk, could not remember seeing George or selling him any beer. There were no witnesses to the transaction. George himself denied being intoxicated at the time, although he admitted he may have had a slight "buzz." However, we believe the large amount of alcohol consumed by the minors before George's entry into the store, and their evident condition after the accident, might well have constituted sufficient evidence to go to a jury respecting George's condition at the time of his purchase.

We do not reach the issue of Southland's imputed liability resulting from its alleged agency relationship. Our disposition of the issue of liability based upon the Business and Professions Code resolves the petitions in favor of petitioners, and renders the question of agency moot. We proceed, therefore, to discuss the core issue common to both petitions.

Section 25602 precludes civil liability based upon the sale of alcoholic beverages to a consumer who subsequently injures another. Section 25602.1, however, provides an exception to this immunity from liability as follows: "Notwithstanding subdivision (b) of Section 25602, a cause of action may be brought by or on behalf of any person who has suffered injury or death against any person licensed, or required to be licensed, pursuant to Section 23300, or any person authorized by the federal government to sell alcoholic beverages on a military base or other federal enclave, who sells, furnishes, gives or causes to be sold, furnished or given away any alcoholic beverage, and any other person who sells, or causes to be sold, any alcoholic beverage, to any obviously intoxicated minor where the furnishing, sale or giving of that beverage to the minor is the proximate cause of the personal injury or death sustained by that person."

Hoffman's theory is that if it is shown that George was obviously intoxicated when he bought the beer, and that the drinking of this addition-

al beer by Machado was a "proximate cause" of the accident, then the statute provides a basis for liability. The petitioners, on the other hand, contend that the statute was intended to provide liability only when the minor who purchased the alcohol is the minor whose subsequent negligence actually causes the injury.

From this explication of positions it can be seen that all parties tacitly agree that, for purposes of argument at least, it can be assumed that George's purchase of the beer could be found by a trier of fact to be an "actual" cause of the accident—that "but for" the purchase of the additional beer and consumption of same by Machado the accident would not have occurred. (See Prosser & Keeton on Torts (5th ed. 1984) § 41, pp. 263-268.) The subject of their disagreement is whether the statute's purpose and intent was to impose liability for negligence by *other* than the purchaser of the beverage. Not necessarily the same argument, but certainly related, is the contention that although George's action may have been an "actual cause" of the accident it was not, in light of the statutory objective, the "proximate cause."

The history of dramshop claims laws in California has been well documented in case law. (See *Lammers* v. *Pacific Electric Ry. Co.* (1921) 186 Cal. 379, 384 [199 P. 523]; *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 158-167 [95 Cal.Rptr. 623, 486 P.2d 151]; *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 323-325 [174 Cal.Rptr. 500, 629 P.2d 8]; *Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 149-155 [145 Cal.Rptr. 534, 577 P.2d 669]; *Cory* v. *Shierloh* (1981) 29 Cal.3d 430, 434-441 [174 Cal.Rptr. 500, 629 P.2d 8]; *Strang* v. *Cabrol* (1984) 37 Cal.3d 720, 722-728 [209 Cal.Rptr. 347, 691 P.2d 1013]; see also § 25602, subd. (c).) Prior to *Vesely* the law of California was similar to that of most common law jurisdictions. The proximate cause of drunkenness was deemed to be the consumption of alcohol by the negligent consumer, and liability would not fix upon a person who had sold him alcohol, even if imprudently. (See, e.g., *Cole* v. *Rush* (1955) 45 Cal.2d 345, 356 [389 P.2d 450, 54 A.L.R.2d 1137].) *Vesely, Bernhard* and *Coulter* changed this law, concluding that the furnishing of alcohol to an intoxicated person could be the basis for a claim of negligence. (*Coulter* v. *Superior Court, supra,* 21 Cal.3d at p. 147; *Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d at p. 325, *Vesely* v. *Sager, supra,* 5 Cal.3d at p. 157.) In reaction to these decisions, rare in terms of its specificity, the Legislature adopted section 25602, subdivisions (b) and (c) and stated that ". . . this section shall be interpreted so that the holdings in cases such as *Vesely* . . . *Bernhard* . . . and *Coulter* . . . be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries inflicted upon another by an intoxicated person." (§ 25602, subd. (c).) Similar directive

language was adopted as an amendment to Civil Code section 1714. (Civ. Code, § 1714, subd. (b).)

The Legislature's return to immunity for dramshop owners and others dispensing alcohol was not, however, complete. While adopting the immunity statements of section 25602 and Civil Code section 1714, new section 25602.1 was created. Thus, in 1978 the Legislature created broad immunity for alcohol dispensers, while carving out a niche of liability for those who sell alcohol to obviously intoxicated minors. It is our conclusion that the terms of section 25602.1 should be construed strictly, so as to require that the negligence resulting in liability of the alcohol purveyor be that of the very person who purchased the beverage. We arrive at this conclusion by application of settled principles of statutory construction, amplified by notice of legislative history associated with the code section.

The intent of the Legislature in terms of its grant of immunity from liability can be perceived by the extent of that grant. The 1978 amendments to Civil Code section 1714 and section 25602 have been termed creation of "sweeping civil immunity." (*Strang* v. *Cabrol, supra,* 37 Cal.3d at p. 724; *Cory* v. *Shierloh, supra,* 29 Cal.3d at p. 436.) The one exception to this grant was the retention in section 25602.1 of liability for one who sells to an obviously intoxicated minor. █ As stated in *Strang* v. *Cabrol, supra,* at page 725, this brings into play the maxim *expressio unius est exclusio alterius*; that is, an express exclusion from a statute indicates an intention that it be the only exclusion. We therefore justifiably approach the construction of sections 25602 and 25602.1 in an attitude of strict construction of the exception to the general rule.

Hoffman contends, however, that the literal interpretation of the statute favors their position, and that strict construction has no application. *Strang* is not in point, they contend, because it dealt with a rather obvious condition to the application of section 25602.1, to wit, that the minor be "obviously intoxicated." The condition applicable to this case is simply that the sale of the beverage be "the proximate cause of the . . . injury." Had the Legislature intended that liability attach only upon injury by the minor to whom the beverage was sold, it would (contends Hoffman) have so stated.

To determine the validity of Hoffman's argument, we examine the legislative history. █ Our objective, of course, is always to look for the intention of the Legislature, and it is appropriate to search for same in committee reports and other sources of legislative history. (*Nasser* v. *Superior Court* (1984) 156 Cal.App.3d 52, 58[202 Cal.Rptr. 552].) The version of the bill adopted by the Legislature resulted from amendment by the Conference Committee on August 31, 1978. (Conference Amend. to Sen. Bill No. 1175

(1977-1978 Reg. Sess.) Aug. 31, 1978.) We find instructive the Committee Conference Report for that final version of the bill which explained a legal cause of action existed if a licensed dispenser furnished alcoholic beverages "to an obviously intoxicated *minor* if that minor causes personal injury or death." (Conf. Com. Rep. (1977-1978 Reg. Sess.), No. 015533, Sen. Bill No. 1175, italics in original.) Additionally, the Legislative Counsel's Digest to the August 31, 1978 amended version notes that the bill "would create a cause of action against a licensee who furnishes alcoholic beverages to an obviously intoxicated minor *if the* minor causes personal injury or death." (Legis. Counsel's Dig., Sen. Bill No. 1175, 4 Stats. 1978 (Reg. Sess.) Summary Dig., p. 249, italics added.) Another indication of legislative intent (admittedly after the fact, but nonetheless official) is found in the Assembly Analysis of the 1986 bill which amended the questioned section. Referring to the effect of the 1978 statute, the "comment" included an observation that the liability resulted from the sale to "an obviously intoxicated minor *who thereafter,* as a result, injures any person." (Assem. File Analysis of the Assem. Office of Research, 3d Reading File, Sen. Bill No. 1053 (1985-1986 Reg. Sess.), rev. as amended June 18, 1986, p. 2, italics added.)[2]

Admittedly, the excerpts from legislative annotations do not provide completely reassuring indications of intent. We select and focus upon stray clauses in larger documents which may, or may not, have been constructed with technical precision. While instructive, therefore, these somewhat less than overwhelming legislative clues are not conclusive.[3]

Hoffman invites us to deal directly with the requirement that the cause of the injury be "proximate," suggesting that the use of this word excludes the

[2] Hoffman asks us to note that the bill which became section 25602.1 at one point contained language to the effect that liability would attach for injuries caused by the intoxicated person. This language later being stricken, Hoffman suggests we infer a departure from an original intention of limitation. Our research of legislative history reveals no apparent correlation between language deleted at an early state in the bill's progress and its final phraseology. The language to which we are directed by Hoffman was that contained in the August 23, 1978, amended version of Senate Bill No. 1175 which provided for civil liability for a licensee who furnished alcohol to *any* obviously intoxicated person. The amended bill provided in pertinent part: "(b) Any person injured . . . by an obviously intoxicated person shall have a cause of action against any licensee, . . . who, by selling any alcoholic beverage to an obviously intoxicated person, proximately caused the intoxication which caused the injury or damage." (Assem. Amend. to Sen. Bill No. 1175 (1977-1978 Reg. Sess.) April 28, 1977.)

After legislative maneuvering, the entire wording of the August 23, 1978, version of Senate Bill No. 1175 was deleted and new section 25602.1 was inserted, providing for liability for sale to obviously intoxicated minors. Since the deletion of language referred to by Hoffman was the deletion of the *entire bill,* in favor of completely new textual material, we derive no indication of intent as respects a single phrase in the deleted bill.

[3] Both parties urge upon us contrary statements by the bill's author, Senator John Foran, as to legislative intent. In accordance with *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699-701 [170 Cal.Rptr. 817, 621 P.2d 856], we decline to consider Senator Foran's statements.

determination that any other or further "cause" need be found. We accept the definitional challenge, but come to a contrary conclusion. It is noted that "proximate" is a word the usage of which is singularly limited to the definition of the effective cause of an injury. Not only must negligence be an "actual" cause of injury, but it must as well be a "proximate" cause. The exact meaning of "proximate" in this context is the subject of considerable scholarly debate.[4] Whatever its precise meaning, however, there is no doubt but that it is intended to be a limiting factor to actual cause. In a philosophical or scientific sense the "causes" of an event may be traced without limitation to remote antecedent occurrences. "As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability." (Prosser & Keeton on Torts, *supra,* § 41, at p. 264.)

In light of the technical definition of "proximate," it is then most interesting to find the continual use of the word in the history to section 25602.1. The conventional explanation for failure to impose liability on a seller of alcohol, prior to *Vesely,* was that it was the drinking rather than the furnishing of alcohol which was the *proximate* cause of the drunkenness and resulting damage. (See, e.g., *Hitson* v. *Dwyer* (1943) 61 Cal.App.2d 803, 809 [143 P.2d 952]; *Fleckner* v. *Dionne* (1949) 94 Cal.App.2d 246, 248 [210 P.2d 530].) The reversal of the rule of nonliability in *Vesely* required a detailed discussion of the concept of proximate cause, and a conclusion that "[u]nder the above principles of proximate cause, it is clear that the furnishing of an alcoholic beverage to an intoxicated person may be a proximate cause of injuries inflicted by that individual upon a third person." (*Vesely* v. *Sager, supra,* 5 Cal.3d at p. 164.) The soon-following and confirming Supreme Court cases repeated the logic of connecting injury with prior furnishing of alcohol, concluding the relationship to be "proximate." In *Bernhard* v. *Harrah's Club, supra,* 16 Cal.3d 313, the prior use of proximate cause to deny liability was described as a rule which was "patently unsound and totally inconsistent with the principles of proximate cause established in other areas of negligence law. . . ." (*Id.* at p. 324.) The majority in *Coulter* v. *Superior Court, supra,* 21 Cal.3d 144, in imposing liability on social servers of alcohol, framed the issue in terms of "foreseeability." The opinion nevertheless discusses the factors that go into a determination of duty in language which could as easily be labeled "proximate cause,"[5] and

---

[4] See Prosser and Keeton on Torts, *supra,* section 41 et seq., page 263 et seq. A typical definition was adopted early in California jurisprudence as follows: "The legal concept of the proximate cause is quite distinct [from actual cause]. It is based on the principle that consequences which follow from the original wrong in unbroken sequence, without an intervening sufficient independent cause, are natural and proximate and for these the original wrongdoer is responsible." (*Merrill* v. *Los Angeles Gas & Elec. Co.* (1910) 158 Cal. 499, 503 [111 P. 534].)

[5] *Coulter* v. *Superior Court, supra,* 21 Cal.3d at page 153, contains the following passage: "We have previously identified certain factors other than foreseeability in determining the ul-

the concurring opinion of Justice Mosk discusses additional factors which, he believes, go to a determination of proximate cause. (*Id.* at pp. 153, 156.)

What, then, can we reasonably conclude from the Legislature's use of this almost mystic word in its new statutory scheme adopted in 1978 for the specific purpose of overruling *Vesely* and its progeny? In section 25602, subdivision (c), it is stated that these decisions are abrogated "in favor of prior judicial interpretation finding the consumption of alcoholic beverages rather than the serving of alcoholic beverages as the proximate cause of injuries. . . ." Similar language was inserted in Civil Code section 1714, subdivision (b). And, of course, the limitation was inserted in section 25602.1 that the furnishing of alcohol to the minor must be the "proximate" cause of injury.

■ We consider this evolution of the concept of proximate cause in the California dramshop law to be instructive and conclude that the insertion of the limitation "proximate" must have been intended to restrict, rather than to expand, potential application of this one exception to liability. We consider, for example, the application of the concept of foreseeability—one of the touchstones of proximate cause. It is indeed foreseeable that the furnishing of liquor to an intoxicated minor will result in his increased or continued inebriation, which may result in damage to someone else. It is clearly *less* foreseeable that the intoxicated minor will give the liquor so purchased to someone else, whose subsequent intoxication will cause injury. (See Prosser & Keeton on Torts, *supra,* at § 43, p. 280 et seq.) The misuse of the alcohol by the third party (whether he be a minor or an adult) is at least arguably, to use proximate cause language, "remote," and not the "natural and probable consequence" of the sale to the minor. (*Op. cit. supra,* at pp. 282, 283.)

We therefore conclude that injury resulting from intoxication of a person to whom an intoxicated minor (as described in § 25602.1) gives liquor, is not injury proximately resulting from the sale to the intoxicated minor. Accordingly, the exception to nonliability provided by section 25602.1 does not apply, and the petitioners in interest in this litigation should be found immune from claims.

timate existence of a 'duty' to third persons. These factors include: '. . . the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (*Rowland* v. *Christian* [(1968) 69 Cal.2d 108] at p. 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)"

This paragraph could have been taken from a hornbook discussion of proximate cause. (See, e.g., Prosser & Keeton on Torts, *supra,* § 42, p. 272 et seq.)

## DISPOSITION

An alternative writ or order to show cause would add nothing to the presentation. A peremptory writ is proper. (Code Civ. Proc., § 1088; *United Nuclear Corp.* v. *Superior Court* (1980) 113 Cal.App.3d 359 [169 Cal.Rptr. 827]; *Goodenough* v. *Superior Court* (1971) 18 Cal.App.3d 692, 697 [96 Cal.Rptr. 165].)

Let a peremptory writ of mandate issue, directing the superior court to enter summary judgment in favor of the petitioners.

Kremer, P. J., and Nares, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied September 7, 1989.